807 So.2d 467 (2001)
James Earl JACKSON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00904-COA.
Court of Appeals of Mississippi.
October 23, 2001.
Rehearing Denied February 5, 2002.
*468 Robert Charles Stewart, Attorney for Appellant.
Office of the Attorney General by Charles W. Maris, Jr., Jackson, Attorney for Appellee.
Before McMILLIN, C.J., BRIDGES, and CHANDLER, JJ.
CHANDLER, J., for the court.
¶ 1. James Earl Jackson was convicted of two counts of attempted armed robbery in the Circuit Court of the First Judicial District of Harrison County. He was sentenced to serve, as a habitual offender, fifteen years on each count for a total of thirty years in the custody of the Mississippi Department of Corrections. Aggrieved by the judgment entered against him, Jackson filed this appeal. He argues that the trial court erred in not suppressing and/or admitting evidence and testimony regarding the out-of-court show up identification. He further argues that because the out-of-court identification was impermissibly suggestive, the in-court identification should not have been allowed.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Just after midnight on July 13, 1997, Linda Barrymore, Marilyn Bush, and Kay Howard, of Haynesville, Louisiana, returned to the Best Western Hotel in Gulfport, Mississippi, after an evening spent at one of the Gulf casinos. Due to the full parking lot, the ladies parked their van next to the back fence of the parking lot. As they exited the vehicle, an African American man, approached them and suggested they move the van because it was blocking a gate. Ms. Barrymore did so, according to the man's directions. The three ladies and the man began walking toward the hotel lobby. The man asked Ms. Barrymore for a cigarette and a light which she gave him. He then noticed a car leaving the parking lot and offered to go stand in the spot while Ms. Barrymore moved her vehicle. She agreed and moved the van to the new parking spot. As she exited the vehicle, the man pushed a gun into her abdomen and demanded her money. She grabbed the barrel of the gun and told him that she did not have any money. By this time, the two other women noticed that their friend was not with them, so Ms. Bush began to look for her. Ms. Bush spotted the van and walked closer. As she neared the vehicle, she could see Ms. Barrymore struggling with the man. Ms. Bush was frightened and began to scream for help. The man then pointed the gun toward her and demanded her money. She answered that she did not have any money. At this time, Ms. Barrymore pushed the panic alarm on her key ring, setting off the lights and alarm on her van causing the man to flee. The women went *469 to the hotel lobby and called the police. They described the man who tried to rob them as a black male, approximately six foot two inches tall, wearing a white tee shirt, dark blue shorts, and sandals.
¶ 4. Within half an hour, the police stopped a man approximately a mile and a half from the hotel who matched the women's description of the culprit. The police handcuffed him and placed him in a police car. The police then brought the three women to that location to determine whether they could identify the suspect. The ladies were left in the car while Jackson was brought to the vehicle. The police shined a light on Jackson and asked the ladies if he was the man who had attempted to rob them. Ms. Barrymore and Ms. Bush identified him as the man from the parking lot. Ms. Howard was not present at the scene so she took no part in the identification.
¶ 5. Jackson was convicted in the Circuit Court of the First Judicial District of Harrison County. He was found guilty of two counts of attempted armed robbery and sentenced as a habitual offender to consecutive terms of fifteen years for each count of the crime.

LAW AND ANALYSIS

I. DID THE TRIAL COURT ERR IN REFUSING TO SUPPRESS AND/OR ADMITTING EVIDENCE AND TESTIMONY OF THE OUT-OF-COURT SHOW UP IDENTIFICATION AND IN ALLOWING THE IN-COURT IDENTIFICATION?
¶ 6. The standard of review for suppression hearings on matters of pretrial identification is "whether or not substantial credible evidence supports the trial court's findings that, considering the totality of the circumstances, in-court identification testimony was not impermissibly tainted." Gray v. State, 728 So.2d 36 (¶ 159) (Miss.1998). On review, an appellate court should reverse a lower court's decision only where there is no credible evidence to support the ruling. Id.; Ray v. State, 503 So.2d 222, 224 (Miss.1986).
¶ 7. Jackson argues that the procedures used to conduct the out-of-court show up identification were so impermissibly suggestive that they created a substantial likelihood of misidentification. He further argues that because the out-of-court identification was improper, the in-court identification was tainted and should not have been allowed.
¶ 8. In Gray, the Mississippi Supreme Court held that even if the out-of-court identification was suggestive, the in-court identification should not be automatically excluded. Gray, 728 So.2d at (¶ 160). The Gray court noted that reliability was the key issue in determining the admissibility of identification testimony. Id.; Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). "The lower court must determine from the totality of the circumstances if the identification was reliable even though the confrontation procedure may have been suggestive." Gray, 728 So.2d at 68 (¶ 160); York v. State, 413 So.2d 1372, 1377-78 (Miss.1982). To meet this standard, the court should look to the five factors listed in Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Gray, 728 So.2d at (¶ 161); Ellis v. State, 667 So.2d 599, 605 (Miss.1995). The five factors are:
1) Opportunity of the witness to view the accused at the time of the crime;
2) The degree of attention exhibited by the witness;
3) The accuracy of the witness' prior description of the criminal;

*470 4) The level of certainty exhibited by the witness at the confrontation;
5) The length of the time between the crime and the confrontation.
Id.; York, 413 So.2d at 1383. Where the trial court examines these factors, and finds that, under the totality of the circumstances, the in-court identification is reliable, an appellate court should only disturb the finding where there is an absence of credible evidence to support the finding. Ellis, 667 So.2d at 605; Ray, 503 So.2d at 223-24.
¶ 9. To determine if there is credible evidence to support the trial court's ruling, this Court must examine the Biggers factors in light of the facts of this case.

1). The opportunity of the witness to view the accused at the time of the crime.

¶ 10. The victims of the crime, Ms. Barrymore and Ms. Bush, both testified that the hotel parking lot was well lit with big bright lights. Ms. Barrymore testified that she was in the parking lot with Jackson for approximately twenty minutes. She further testified that when Jackson pulled the gun on her, he was directly in front of her face and standing very close to her. Ms. Bush testified that when Jackson threatened her with the gun, he was less than three feet from her. The witnesses had ample opportunity to view the accused in a well-lit environment where they could clearly see his features. In White v. State, 507 So.2d 98, 100 (Miss.1987), the court noted under this first factor, that the witness in that case, who was also the victim of the crime, testified to being in a well-lit area for three to five minutes with the defendant and focused all her energy and attention on the defendant because he wielded a pistol. Those facts, very similar to the case sub judice, satisfied this condition.

2). The witness's degree of attention.

¶ 11. This factor is satisfied by the evidence discussed relative to factor number one. Ms. Barrymore and Ms. Bush were held at gunpoint. There is no doubt that their attention was focused on the person wielding the pistol. White, 507 So.2d at 100.

3). The accuracy of the witness's prior description of the criminal.

¶ 12. Ms. Barrymore and Ms. Bush told the police that the man who attacked them was a black male, approximately six feet two inches tall, wearing a white tee shirt, dark blue shorts, and black sandals. Jackson was found just one and one-half miles from the hotel, less than half an hour after the crime had taken place. His appearance matched the physical description given by the witnesses and he was wearing the exact clothes described by them.

4). The level of certainty demonstrated by the witnesses at the confrontation.

¶ 13. Ms. Barrymore and Ms. Bush testified, regarding their identification of Jackson at the show up, that they had no hesitation or doubt at all that he was the man who had attempted to rob them at gun point. At trial, Detective Steve Schlict testified that the ladies indicated that they were "with out a doubt" that Jackson was the culprit.

5) The length of time between the crime and the confrontation.

¶ 14. The show up identification occurred approximately one hour after the crime was committed. The police found Jackson very close to the Best Western Hotel just a half an hour after the crime was reported. Very little time passed between the crime and the confrontation, which tends to support the reliability of the identification.
*471 ¶ 15. Even if the show up identification was suggestive as claimed by Jackson, the reliability of the in-court identification is evident from the record. Each factor under the Biggers analysis is sufficiently met. The trial court did not err in denying Jackson's motion to suppress the out-of-court identification or in allowing the in-court identifications.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF COUNT I AND COUNT II OF ATTEMPTED ARMED ROBBERY AND SENTENCE OF FIFTEEN YEARS FOR EACH COUNT TO RUN CONSECUTIVELY, FOR A TOTAL OF THIRTY YEARS TO BE SERVED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER IS AFFIRMED. COSTS ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS and BRANTLEY, JJ., CONCUR.