856 So.2d 729 (2003)
C.K. GARNER, Appellant,
v.
STATE of MISSISSIPPI, Appellee.
No. 2002-KA-00391-COA.
Court of Appeals of Mississippi.
October 14, 2003.
*730 George T. Kelly, Marie Wilson, attorneys for appellant.
Office of the Attorney General by: Billy Gore, attorney for appellee.
Before McMILLIN, C.J., MYERS and GRIFFIS, JJ.
McMILLIN, C.J., for the court.
¶ 1. C.K. Garner, having been convicted in Sunflower County Circuit Court of the armed robbery of Ora Smith, has appealed that conviction to this Court. The appeal presents the following issues: (a) whether the trial court erred in excluding evidence of the acquittal of Garner's co-indictee in an earlier trial, (b) whether the trial court erred in refusing to suppress the victim's in-court identification of the defendant as her assailant because it was based on an impermissibly suggestive show-up, (c) whether the trial court should have allowed a pre-trial lineup on the defendant's motion, and (d) whether the indictment was fatally defective for failure to properly *731 charge venue. Garner also makes an attack on the State's evidence, although it is unclear whether he contends that the evidence was insufficient as a matter of law to sustain a guilty verdict or that the verdict was against the weight of the evidence. Finally, Garner suggests the need to overturn his conviction based on the cumulative weight of the various errors alleged in his appeal.
¶ 2. We find none of Garner's issues to have merit and, as a result, affirm his conviction and resulting judgment of sentence.

I.

Facts
¶ 3. Smith testified to being accosted in the parking lot of a grocery store in Sunflower County by two black males. One struck her in the head with a hard object and the other threatened her with a firearm. The two assailants took from her a sum of money she had been carrying in her hand, after which they were picked up by a third individual driving an older model light blue vehicle.
¶ 4. Based on Smith's description of her assailants and the get-away vehicle, Garner became a suspect and investigating officers brought him to the police station as a part of their inquiry. Smith was still in the station when Garner was brought in. Smith observed Garner in the hall and identified him as one of the robbers. He was subsequently required to remove an outer pair of camouflage-patterned trousers, which revealed that he was wearing a pair of black "windbreaker" shorts underneath. Smith had previously reported that her assailant had worn a pair of black windbreaker pants.
¶ 5. Garner was indicted along with Frederick Washington for the crime. The trials of the two defendants were severed on Garner's motion, and Washington was tried first. The record of that trial is not before us, but Garner contended at his trial that Smith testified for the prosecution at Washington's trial and positively identified Washington as one of the two assailants. Further, according to Garner's representations, Washington presented some form of alibi evidence in his defense and was ultimately acquitted by the jury in that case. The trial court refused to permit evidence of these facts to be presented to the jury trying Garner.

II.

Evidence of Washington's Acquittal in a Separate Trial
¶ 6. The State successfully pursued a motion in limine to exclude any evidence that Washington had been acquitted in an earlier trial. On appeal, Garner contends that the exclusion of this evidence was prejudicial to the defense since it tended to impeach the credibility of Smith's claim that she could identify her assailants.
¶ 7. Evidence is generally admissible if it is relevant. M.R.E. 402. Mississippi's Rules of Evidence set out the test for determining relevancy as follows:
"Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
M.R.E. 401.
¶ 8. The issue before this Court is whether a prior jury's acquittal of a co-defendant, in the situation where an eyewitness testified to having identified that defendant as one of the perpetrators, is relevant to that witness's ability to identify the defendant on trial. In the opposite situation, where the co-defendant was convicted, the law is clear.

*732 The law is well settled in this state that where two or more persons are jointly indicted for the same offense but are separately tried, a judgment of conviction against one of them is not competent evidence on the trial of the other because such ... conviction is no evidence of the guilt of the party being tried.
Buckley v. State, 223 So.2d 524, 528 (Miss. 1969). Certainly, had Washington been convicted in his separate trial, it would have been reversible error for the State to inject proof of that conviction in Garner's trial in order to bolster its case. We see no principled reason to apply a different rule when, as here, the result of the earlier trial is favorable, rather than prejudicial, to the defense.
¶ 9. Garner attempts to narrow the purpose of the evidence to say that the verdict of acquittal bears at least indirectly on the victim's credibility. The jury charged with trying a particular case, sitting as finder of fact, is the sole judge of the credibility of the witnesses presented at trial. Barnett v. State, 757 So.2d 323, 331(¶ 25) (Miss.Ct.App.2000) (citing Harris v. State, 527 So.2d 647, 649 (Miss.1988)). A jury trying a criminal case normally must sort through substantial amounts of evidence, some portions tending to indicate guilt and other portions tending to exonerate the defendant. In that situation, it would be essentially impossible to draw a direct link between the verdict of acquittal and any particular aspect of the proof. Even if it is assumed that the prior verdict speaks, in some indirect way, to that jury's assessment of the victim's credibility, it would be improper to afford the subsequent jury that information. To do that would, in effect, install the earlier jury as an advisory body offering its own view as to Smith's credibility and would tend to usurp, or at the very least, improperly influence the deliberations of the jury on issues that are solely within the province of the finders of fact. The trial court did not err in excluding this evidence.

III.

Show-up Identification and In-court Identification
¶ 10. Garner sought to suppress any identification of him by the victim based on the assertion that he was initially identified as the assailant through an impermissibly suggestive show-up and that this rendered untrustworthy both Smith's initial identification and her subsequent in-court identification. The trial court refused to suppress that testimony. As a result, at trial, Smith was permitted to testify that, shortly after she arrived at the police station where she had gone to report the crime, she saw Garner in the hall. Garner, who resided near the police station, had been brought in for questioning soon after Smith's initial report because one of the investigating officers felt, based on his personal familiarity with Garner, that Smith's description of one of the assailants and her description of the vehicle used by the robbers had implicated Garner as a suspect in the crime.
¶ 11. Garner now contends that this encounter in the police station constituted a single-person show-up under circumstances that made it likely that she would identify him based, not on an actual recognition, but on the suggestive nature of the circumstances. Formal, arranged single-person show-ups in which the police purposely cause a victim to be confronted with a single individual bearing some general resemblance to the description offered by the victim are not favored in the law. "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been *733 widely condemned." Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), rev'd on other grounds, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). However, the case makes clear that the fact of an identification based on a single person show-up is not, of itself, a basis to exclude evidence of the identification. Rather, the issue is whether, based on a totality of the circumstances, the show-up "was so unnecessarily suggestive and conducive to irreparable mistaken identification" that it amounted to a deprivation of due process. Id.
¶ 12. The considerations that go into making such a determination were set out in some detail in the later case of Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). That case outlined these five factors: (1) the opportunity of the witness to view the accused at the time of the crime; (2) the degree of attention exhibited by the witness; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty exhibited by the witness at the confrontation; and (5) the length of the time between the crime and the confrontation. Id. at 199-200, 93 S.Ct. 375.
¶ 13. We note initially that, in this case, there is no indication that the police purposely arranged this face-to-face encounter so that there is some question as to whether this was, in fact, a show-up or merely a chance encounter. However, even conceding for sake of argument that the circumstances give rise to a legitimate due process claim on Garner's behalf, we are satisfied that, based on a review of the applicable factors of Neil v. Biggers, Smith's identification of Garner was not made under such unnecessarily suggestive circumstances as to destroy the probative value of her identification. Smith testified at the suppression hearing that the assailants had confronted her in broad daylight and in close proximity. They were not wearing masks, and she claimed to have given particular attention to their features based on her original impression that she was being approached by persons with whom she was acquainted. Smith's description given to police was sufficiently accurate for them to identify Garner as a suspect based on nothing besides information obtained from her, and, at every stage of the investigation and trial, she continued to be certain that she had properly identified Garner as one of her assailants. Finally, only the briefest of time transpired between Smith's encounter in the parking lot and her subsequent unanticipated encounter with Garner at the police station, at which time she identified him of her own volition, apparently without any prompting or inquiry from any investigating officer.
¶ 14. Under the relevant considerations of Neil v. Biggers, we do not conclude that the trial court erred in permitting evidence of this out-of-court identification or by permitting the victim to make an in-court identification of Garner during the course of the trial.

IV.

Request for Additional Lineup
¶ 15. Garner, apparently intending to test once again Smith's ability to identify him as one of her assailants, requested that the State stage a pre-trial lineup. The court refused to order such a proceeding, and Garner contends that this was reversible error. However, in his brief to this Court, Garner cites no authority for the proposition that a defendant may compel the State to conduct such a proceeding in the hope that the lineup will provide ammunition helpful to the defense. Neither does he advance any coherent argument, based upon constitutional principles or some other relevant consideration, demonstrating *734 that he was denied a fundamentally fair trial because such a lineup was not conducted. In the absence of legal authority or logically persuasive argument in support of this contention, we find it to be without merit. Taylor v. State, 754 So.2d 598, 610-11 (¶¶ 37-40) (Miss.Ct.App. 2000) (quoting Johnson v. State, 154 Miss. 512, 513, 122 So. 529 (1929)).

V.

Defective Indictment
¶ 16. Garner sought to have the indictment against him dismissed as being fatally defective on its face for its failure to properly charge venue. The indictment in its original form, failed entirely to charge that the alleged crime occurred in Sunflower County. However, after Garner raised the issue before trial commenced, the trial court permitted an amendment to the indictment to set out venue. Garner contends that the trial court was without authority to amend the indictment and that his conviction should be set aside and this case dismissed because of lack of jurisdiction. The failure to properly charge venue is a procedural defect that may be amended upon order of the trial court without the necessity of grand jury action. Miss.Code Ann. § 99-7-5 (Rev.2000); Evans v. State, 144 Miss. 1, 5, 108 So. 725, 726 (1926) (citing Smith v. Corp. of Oxford, 91 Miss. 651, 45 So. 365 (1908)). Garner attempts to draw a distinction between an indictment that completely omits any reference to venue and one that has "an improper or imperfect statement of the venue of the crime" as set out in Section 99-7-5. We do not find his argument in support of this contention persuasive. Rather, we conclude that an omission of any reference to venue is encompassed within the meaning of the phrase "imperfect statement" found in the applicable statute. For that reason, we find this issue to be without merit.

VI.

Garner's Challenge to the State's Evidence
¶ 17. Garner contends that his conviction should be reversed based on a perceived failure by the State to satisfactorily demonstrate his guilt. In this issue, Garner combines two separate legal issues, and it is unclear which proposition he is actually advancing. We will, out of an abundance of caution, consider them both.

VII.

The Sufficiency of the Evidence
¶ 18. If, as to one or more of the essential elements of the crime, the State's proof is so lacking that a fair-minded juror reasonably assessing the evidence could only find the defendant not guilty, then, on proper post-trial motion by the defendant, the trial court is obligated to enter a judgment of acquittal notwithstanding the jury's contrary decision. Gleeton v. State, 716 So.2d 1083, 1087(¶ 14) (Miss.1998) (citing Wetz v. State, 503 So.2d 803, 808 (Miss. 1987); Franklin v. State, 676 So.2d 287, 288 (Miss.1996)). If the trial court denies that motion and the matter is raised as error on appeal, this Court is required to review all of the evidence to determine whether the trial court erred. Our review requires us to assess the evidence in the light most favorable to upholding the verdict. Id.
¶ 19. Garner's argument is based on the proposition that there was no physical evidence of his involvement nor was he ever found to be in possession of any of the fruits of the crime. He combines this with the assertion that Smith was obviously dazed from the attack so that her ability to positively identify her assailants ought not *735 to be considered to have much probative value.
¶ 20. The uncorroborated testimony of the victim of a crime is, of itself, sufficient evidence to sustain a conviction if the jury finds the testimony worthy of belief. Barnett, 757 So.2d at 331(¶ 27) (citing Williams v. State, 512 So.2d 666, 670 (Miss.1987)). Questions of credibility of any witness, including the victim, as well as what weight or worth to assign to any witness's testimony, are matters left to the sound discretion of the jury sitting as finders of fact. Id. at (¶ 25). There is no indication in this case that the jury abandoned its duty in this case and decided the issue of guilt based on some alternate, and impermissible, basis such as bias, passion or prejudice against the defendant. Wal-Mart Stores, Inc. v. Johnson, 807 So.2d 382, 389(¶ 16) (Miss.2001) (citing Bobby Kitchens, Inc. v. Miss. Ins. Guar. Ass'n, 560 So.2d 129, 131 (Miss.1989)). Smith's testimony provided evidence of all of the essential elements of the crime and her testimony identifying Garner was unequivocal. In that situation, we cannot say that a judgment of acquittal was the only appropriate result of this trial.
¶ 21. There is the related issue as to whether, despite the State's ability to present evidence sufficient to support a conviction, the overall assessment of the proof for and against guilt leads the court to the conclusion that the verdict was so against the weight of the credible evidence that to permit it to stand would work a manifest injustice. In that situation, rather than a court-mandated judgment of acquittal, the law requires that the defendant be granted a new trial. Johnson v. State, 642 So.2d 924, 928 (Miss.1994). Because of the somewhat subjective nature of the analysis of the evidence on this question, the trial court has substantial discretion in determining whether a new trial is indicated on that ground. Id. If the motion is denied by the trial court and that decision is raised as error on appeal, the appellate court must review all of the evidence and, affording the trial court substantial deference based on that court's having heard the evidence first hand, assess the denial of the motion on an abuse of discretion standard. Id. (citations omitted). In this case, we have evidence of the fact that, shortly after the incident, the victim was able to give a description of her assailant and the get-away vehicle that was of sufficient detail and clarity that it enabled investigating officers to immediately identify Garner as a suspect. Subsequently, Smith positively identified Garner when she saw him, not in a formal show-up, but in a chance encounter shortly after the incident. Her ability to identify and describe her assailant was further bolstered by the fact that it was discovered that Garner was wearing a pair of camouflage-patterned trousers that, in actuality, covered another pair of trousers that closely fit Smith's earlier description of the manner in which the assailant was dressed. Viewed in the light most favorable to the State, we do not find this verdict to be so against the weight of the evidence as to lead us to the conclusion that the trial court abused its discretion in denying Garner's new trial motion.

VIII.

Cumulative Weight of Error
¶ 22. As a final issue, Garner contends that an assessment of the cumulative weight of the various errors, whether each considered in isolation was of such gravity as to require reversal, leads to the conclusion that he did not receive a fundamentally fair trial. We have reviewed the various issues raised and have already concluded that the allegations of various errors were without merit. On that basis, the foundational *736 premise of Garner's argument fails, and we find this contention to be without merit. McFee v. State, 511 So.2d 130, 136 (Miss.1987).
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF SUNFLOWER COUNTY OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO SUNFLOWER COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.