943 So.2d 774 (2006)
Jose Luis Rivera GUERRERO a/k/a Jose Louis Reivera Gurrero, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01971-COA.
Court of Appeals of Mississippi.
December 5, 2006.
*775 Raymond M. Baum, Winona, attorney for appellant.
Office of the Attorney General by Deshun T. Martin, attorney for appellee.
Before MYERS, P.J., SOUTHWICK and GRIFFIS, JJ.
MYERS, P.J., for the Court.
¶ 1. Before this Court is an appeal filed on behalf of Jose Luis Rivera Guerrero, in forma pauperis, from his conviction in the Circuit Court of Attala County of aggravated assault under Mississippi Code Annotated section 97-3-7(2). On September 13, 2005, the jury returned a guilty verdict against Guerrero, finding that on or about *776 June 25, 2004, Guerrero feloniously and purposefully caused serious bodily harm to Raul Olmeda by shooting Olmeda in the chest during a barroom brawl at the Pop-A-Top Cantina, located on Highway 43 North in Attala County. The trial judge sentenced Guerrero to a term of fifteen years under the supervision of the Mississippi Department of Corrections. Guerrero's appeal presents the following issues:
I. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT GUERRERO'S MOTION TO SUPPRESS IN-COURT IDENTIFICATION TESTIMONY BASED UPON "UNDULY SUGGESTIVE" PRE-TRIAL SHOW-UP AND PHOTOGRAPHIC LINEUPS?
II. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT GUERRERO'S MOTION FOR A NEW TRIAL WHERE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 2. Finding no error, we affirm Guerrero's conviction.

STATEMENT OF THE FACTS
¶ 3. On Friday, June 25, 2005, Raul Olmeda, his girlfriend Vicky Edwards, and several friends drove from their home in Carthage, Mississippi to the Pop-a-Top Cantina. The Pop-a-Top Cantina, located one mile north of Kosciusko in Attala County, is an establishment frequented by Hispanic Americans and Mexican nationals. Olmeda and his companions arrived at the Pop-a-Top around 7:30 p.m. and spent the next several hours dancing, shooting pool, socializing, and drinking beer. Around 11:30 p.m., Olmeda and another member of his party became involved in an altercation with two other patrons. A fight broke out among the four men and an all-out barroom brawl ensued, eventually involving more than thirty men. At some point in the melee, two shots were fired and Olmeda fell to the ground with a bullet wound to the chest. The shooter left the scene and Olmeda was rushed to a local hospital. Olmeda was then airlifted to the University of Mississippi Medical Center in Jackson, where he remained in a coma for nearly three weeks before regaining consciousness and beginning the recovery process.
¶ 4. On the night of the shooting, Edwards provided Attala County Sheriff William Lee with a description of the shooter. Edwards stated that she observed the incident from a distance of less than five feet, and that the shooter was a tall, long-haired Hispanic with bad acne, wearing a blue hat and a blue or gray shirt. The next morning, Sheriff Lee relayed Edwards' description to Deputy Robert Riley. Based on Edwards' description, and after ascertaining the identities of several persons who were involved in the altercation from the bartender who had been working at the Pop-a-Top when the shooting occurred, Deputy Reilly picked up Guerrero and his brother, Eric. The two men were brought to the Attala County Jail and placed in the day room. The day room is an area immediately outside the cell block, where inmates, arrestees, and detainees are allowed to congregate during certain hours of the day. Deputy Riley then contacted Edwards, who had accompanied Olmeda to the hospital in Jackson, and informed her that three suspects were in custody. Deputy Riley requested that Edwards come to the Attala County Jail as soon as possible to see if she could identify any of the suspects as the shooter.
¶ 5. The record indicates that, after having spoken with Deputy Riley, Edwards left the hospital and proceeded to the Attala County Jail. Upon arriving at the jail, Edwards entered the door to the jailer's *777 office and immediately recognized Guerrero, whom she could see through a window separating the office and the day room. Edwards exclaimed that Guerrero was the shooter, and the identification was overheard by Deputy Riley as he entered the door behind her. Edwards testified both in a suppression hearing and at trial that she had not met Deputy Riley and did not know he was entering the building behind her until after she had identified Guerrero as the shooter. Deputy Riley testified that, prior to Edward's identification of Guerreo, there had been no indication made to Edwards that Guerrero was a suspect in the shooting, and that Guerreo had not been intentionally singled out or separated from other suspects in any way. Edwards testified that she recognized Guerrero primarily because he was wearing the same clothes he had been wearing the night before and because his severe facial acne was a distinguishing feature.
¶ 6. On June 29, 2005, Edwards again identified Guerrero as the shooter by picking him out of a photographic lineup. The photographic lineup contained black and white pictures of six Hispanic suspects bearing the numbers one through six next to each photograph. Raul Olmeda, the victim, identified Guerrero as the person who shot him after review of a similar photographic lineup. Olmeda's identification was made approximately six weeks after the shooting, once he had regained consciousness and use of his faculties.
¶ 7. Guerrero filed a pretrial motion in which he sought to prohibit any in-court identification of him made by Edwards on the basis that the identification made at the jail was an impermissible show-up lineup. He also asserted that the photographic lineup was tainted because a photograph, later admitted into evidence at trial as Exhibit "S-1" bore the inscription "shooter." However, the trial judge determined that the testimony was admissible and the State was allowed to introduce the evidence at trial.
¶ 8. During the State's case-in-chief, Edwards was asked to make an in-court identification of Guerrero as the shooter; she could not. Edwards testified that she could not identify the defendant, Guerrero, as the shooter because over the two years between the shooting and the trial Guerreo's complexion had cleared up, his hair had been cut, and he had aged. However, Edwards testified that she was "one-hundred percent" certain that the person in the photograph admitted into evidence as Exhibit "S-1" was the person who shot Olmeda. Deputy Riley testified that the person pictured in Exhibit "S-1" was Guerrero and identified him as the defendant. Deputy Riley further testified that Exhibit "S-1," the photograph bearing the inscription "shooter," was not a part of the photographic lineup from which Edwards and Olmeda identified Guerreo, and that neither Edwards nor Olmeda were shown the photograph until the State was preparing for trial. Furthermore, Olmeda made an in-court identification of Guerrero as the man who shot him and this identification is unchallenged on appeal.

LEGAL ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT GUERRERO'S MOTION TO SUPPRESS IN-COURT IDENTIFICATION TESTIMONY BASED UPON "UNDULY SUGGESTIVE" PRE-TRIAL SHOW-UP AND PHOTOGRAPHIC LINEUPS?

STANDARD OF REVIEW
¶ 9. The standard of review for suppression hearings on matters of pre-trial identification is "whether or not substantial credible evidence supports the trial *778 court's findings that, considering the totality of the circumstances, in-court identification testimony was not impermissibly tainted." Johnson v. State, 884 So.2d 787, 789(¶ 4) (Miss.Ct.App.2004) (citing Gray v. State, 728 So.2d 36, 68 (¶ 159) (Miss.1998)). In determining whether the pre-trial identification was so impermissibly tainted as to deprive the accused of due process, the court must apply the five factors enumerated in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and applied by this Court in Garner v. State, 856 So.2d 729, 733(¶ 12) (Miss.Ct.App.2003). The five factors are:
(1) the opportunity of the witness to view the accused at the time of the crime;
(2) the degree of attention exhibited by the witness;
(3) the accuracy of the witness's prior description of the criminal;
(4) the level of certainty exhibited by the witness at the confrontation; and
(5) the length of the time between the crime and the confrontation.
Id. On review, an appellate court should reverse a lower court's decision to admit or refuse to admit a pre-trial identification only where there is no credible evidence to support the ruling. Johnson, 884 So.2d at 789(¶ 4); Ray v. State, 503 So.2d 222, 224 (Miss.1986); see also Jackson v. State, 807 So.2d 467, 469(¶ 6) (Miss.Ct.App.2001).

DISCUSSION
¶ 10. Guerrero sought to suppress any identification of him by Edwards based on the assertion that he was initially identified as the shooter through an impermissibly suggestive show-up that rendered Edwards' initial identification and subsequent in-court identification untrustworthy. The trial court refused to suppress Edwards' testimony. As a result, Edwards testified that immediately upon entering the jail, she recognized Guerrero as the shooter as he stood on the other side of a window separating the jailer's office from the day room where Guerreo and his brother were being held. Deputy Riley testified that Guerrero had not previously been identified to Edwards as a suspect, and Edwards testified that she recognized Guerrero because he was wearing the same clothes as the night before and had distinctive acne.
¶ 11. Guerrero contends that Edwards' identification at the jail constituted a single-person show-up under suggestive circumstances, and is thus tainted. This Court has previously addressed a similar circumstance in Garner, 856 So.2d at 732-33 (¶¶ 11-12), where we decided:
Formal, arranged single-person show-ups in which the police purposely cause a victim to be confronted with a single individual bearing some general resemblance to the description offered by the victim are not favored in the law. "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), rev'd on other grounds, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). However, the case makes clear that the fact of an identification based on a single person show-up is not, of itself, a basis to exclude evidence of the identification. Rather, the issue is whether, based on a totality of the circumstances, the show-up "was so unnecessarily suggestive and conducive to irreparable mistaken identification" that it amounted to a deprivation of due process. Id.

¶ 12. After our review of the record, we can find no indication that the Attala County Sheriff's Department purposefully arranged for Edwards to encounter *779 Guerrero in the manner in which she did. In fact, the record indicates that Deputy Riley was made aware of Edwards' arrival at the jail only seconds before the identification was made, and that he had not had a chance to prepare a lineup. From our perspective, it appears that the encounter between Edwards and Guerrero was mere happenstance. However, assuming for the sake of argument that the circumstance gives rise to a legitimate due process claim on Guerrero's behalf, we are satisfied that, based upon the review of the applicable Biggers factors, Edward's identification of Guerrero was not made under such unnecessarily suggestive circumstances as to destroy the probative value of her identification.
¶ 13. Edwards testified at the suppression hearing that she had observed the shooter from a distance of less than five feet, that she saw the gun and the second of the two shots fired, that her full attention was on the shooter, and that she was "one-hundred percent" certain that Guerrero was the shooter when she identified him at the jail. Furthermore, Guerrero accurately matched the description of the shooter Edwards gave to Sheriff Lee on the night of the shooting, and less than twenty-four hours had elapsed between the shooting and the identification. Based on the foregoing facts, and the relevant considerations under Biggers, we cannot conclude that the trial court erred in permitting evidence of this out-of-court identification or by permitting Edwards to make an in-court identification of Guerrero on the basis of the out-of-court identifications.
¶ 14. Additionally, Guerrero sought to suppress any evidence of Edwards' identification of him as the shooter from the photographic lineup due to the presence of the inscription "shooter" on a photograph taken of him by the Attala County Sheriff's Department. The Mississippi Supreme Court set out the parameters by which photographic line-ups are to be evaluated for admissibility in York v. State, 413 So.2d 1372, 1378 (Miss.1982) (quoting Simmons v. U.S., 390 U.S. 377, 383-84, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)), as follows:
Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.
¶ 15. In the case at bar, Deputy Riley testified that the photograph in question was not taken until after Edwards had identified Guerrero as the shooter both by the inadvertent "show-up" and separate photographic line up. Both Edwards and Deputy Riley testified that the photograph was not a part of the photographic lineup through which Edwards identified Guerrero, and Deputy Riley further testified that Edwards was not shown the photograph *780 until she was being prepared for trial. Therefore, we cannot find that the photographic identification procedure upon which Edwards' testimony was partially based, was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. In fact, Edwards made clear that she was "one-hundred percent" positive that Guerrero was the shooter when she made her out-of-court identification of him. Furthermore, Olmeda conclusively identified Guerrero, both in a photographic lineup and again at trial, as the man who shot him. Therefore, we do not conclude that the trial court erred in permitting evidence of the out-of-court photographic identification or by permitting Edwards to make an in-court identification of Guerrero on this basis.
II. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT GUERRERO'S MOTION FOR A NEW TRIAL WHERE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?

STANDARD OF REVIEW
¶ 16. "In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Herring v. State, 691 So.2d 948, 957 (Miss.1997) (citing Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989)). "Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." Id. (citing Benson v. State, 551 So.2d 188, 193 (Miss.1989)). Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict. Id. (citing Mitchell v. State, 572 So.2d 865, 867 (Miss.1990)).

DISCUSSION
¶ 17. Guerrero contends that the jury verdict was contrary to the overwhelming weight of the evidence and that the trial court should have granted his motion for a new trial. However, a review of the record makes clear that there was ample evidence proving that Guerrero shot Olmeda at the Pop-a-Top Cantina on June 25, 2005. Both Edwards and Olmeda identified Guerrero as the shooter, and all three witnesses called by the defense to rebut that assertion admit to being unable to see the shooter from their vantage points. The facts, when viewed in the light most favorable to the verdict, indicate that a jury could find beyond a reasonable doubt and to the exclusion of every reasonable hypothesis that Guerrero shot Raul Olmeda on the night of June 25, 2005, during an altercation at the Pop-a-Top Cantina. The lower court correctly denied Guerrero's motion for a new trial and this Court will not disturb the jury verdict where, as here, no unconscionable injustice will result and there is ample evidence to support the jury's findings. The jury verdict was not against the overwhelming weight of the evidence and is, therefore, affirmed.

CONCLUSION
¶ 18. Under the relevant considerations of Biggers, we conclude that the trial court did not err in permitting evidence of either of Edwards' two out-of-court identifications of Guerrero or by permitting Edwards to make an in-court identification of Guerrero. Further, we do not find the jury's verdict to be against the overwhelming weight of the evidence. Guerrero's conviction for aggravated assault is, therefore affirmed.
*781 ¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF ATTALA COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ATTALA COUNTY.
KING, C.J., LEE, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.