MARC E. JOHNSON, Judge.
| ¡¿Defendant, Michael Davis, appeals his conviction and sentence for second degree murder, claiming the evidence was insufficient to establish his identity as the perpetrator of the offense and claiming various trial court errors. For the reasons that follow, we affirm.
On February 25, 2013, Defendant was indicted and charged with the second degree murder of Reginal Anthony in violation of La. R.S. 14:30.1. He pled not guilty and proceeded to trial on September 25, 2012. After a two-day trial, a 12-person jury found Defendant guilty as charged. The trial court subsequently sentenced Defendant to life imprisonment without benefit of parole, probation or |3suspension of sentence. Defendant timely appealed and raised four assignments of error.

FACTS

In October 2009, Sonora Williams resided on Millender Drive in the Lincolnshire subdivision in Marrero with his mother and siblings. Around 12:00 p.m. on October 12, 2009, Williams left his residence to walk his girlfriend home to a nearby subdivision. While walking down Millender Dr., Williams encountered Jerry Davis and Myro Videau, two men with whom he was acquainted from the neighborhood. The two men stared at Williams, which prompted Williams to reach toward his back pocket, feigning as if he had a gun. The two men then proceeded to a nearby store. As Williams continued, he noticed the two men staring at him again, nodding their heads. Eventually, Williams dropped his girlfriend off and stayed in her neighborhood for the rest of the day, until nightfall.
Later that night, Williams received a call from his girlfriend, telling him that his friend, the victim, was looking for him. Williams returned to his girlfriend’s house where the victim was waiting for him. Williams and the victim then left and proceeded to Williams’ house. There, they hung out together, playing games and watching television, until they walked to the corner store for beer. On their way back home from the store, Williams recognized a green car that turned onto Millen-der Dr. He feared Jerry Davis, who he had seen earlier that day, was in the car so he told the victim to keep walking. Davis was not in the car, but it contained four passengers, one of whom Williams recognized as Defendant. Williams explained that he knew Defendant from around Lin-colnshire.
As Williams and the victim continued walking, Defendant exited the car and started shooting, discharging 11 or 12 rounds. Williams ran. When he looked back, he saw the victim return fire once or twice. Williams continued to run when |4he saw another individual, clad in all black, appear from between two houses and open fire. Williams stated he could not clearly see the face of the second shooter, but suspected it was Jerry Davis.
Williams made it inside his home, but soon realized the victim was not with him. He looked out his front window and saw the victim lying on the ground. Williams called 911 and then ran to his girlfriend’s *1006 house where he felt safer. From there, his sister picked him up and brought him to her house. Williams then called the police, who picked him up and brought him to the detective bureau.
Williams gave two recorded statements to the police and identified Defendant from a photographic lineup as the gunman. Based on Williams’ identification, an arrest warrant was issued for Defendant.
Deputy Steven Dorsey of the Jefferson Parish Sheriffs Office responded to the scene on Millender Dr. at approximately 9:45 p.m. on the night of the shooting. Upon his arrival, Deputy Dorsey observed a lifeless young black male on the ground with a pistol in his right hand. An autopsy revealed the victim sustained a gunshot wound in which a bullet had entered the right side of his back, perforated both his lungs and heart, and exited the left side of his body. There was no stippling, which indicated the weapon was not discharged at close range.
Twelve 40-caliber casings and four projectile fragments were recovered from the scene. It was determined that all 12 casings were fired from the same weapon, believed to be a Glock firearm. One of the four projectile fragments was a .38-caliber projectile consistent with having been fired from a High-Point firearm, and two of the other fragments were consistent with having been fired from a Glock firearm. It was determined that the .9-mm handgun recovered from the victim did not fire the 40-caliber casings, but it could have fired the one .38-caliber projectile.
|sOne month after the shooting, on November 21, 2009, after a standoff with police, Defendant was arrested in Marrero. After being advised of his rights, Defendant gave a recorded statement in which he denied shooting the victim. He explained that on the night of the shooting, he accompanied his friend, Iriemme Wind-mon, and her teenage son to Burger King and then to a convenience store before proceeding to her house. He stated that while he was at Windmon’s house, someone knocked on the door and informed him that the victim had been killed.

DISCUSSION

Denial of Motion for Post-Verdict Judgment of Acquittal

In his second assignment of error, Defendant contends the trial court erred in denying his motion for post-verdict judgment of acquittal on the basis the evidence was insufficient to support the verdict.[1]
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
This directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact’s rational credibility calls, evidence weighing, and inference drawing. State v. Caffrey, 08-717 (La.App. 5 Cir. 5/12/09); 15 So.3d 198, 202, writ denied, 09-1305 (La.2/5/10); 27 So.3d 297. This deference to the fact-finder does not permit a reviewing court to de *1007 cide whether it believes a witness or whether the conviction is | (¡contrary to the weight of the evidence. Id. As a result, under the Jackson standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at the trial established guilt beyond a reasonable doubt, but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08); 985 So.2d 234, 240.
In making this determination, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. Caffrey, 15 So.3d at 202. Indeed, the resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. See State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04); 875 So.2d 949, 955, writ denied, 04-1605 (La.11/15/04); 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon, 07-915 (La.App. 5 Cir. 3/11/08); 982 So.2d 146, 153, writ denied, 08-987 (La.1/30/09), 999 So.2d 745.
Defendant was charged with and convicted of second degree murder in violation of La. R.S. 14:30.1. Second degree murder is defined, in pertinent part, as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.[2] La. R.S. 14:30.1(A)(1). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. State v. Seals, 09-1089 (La.App. 5 Cir. 12/29/11); 83 So.3d 285, 306, writ denied, 12-293 (La.10/26/12); 99 So.3d 53, cert. denied, _ U.S. _, 133 S.Ct. 2796, 186 L.Ed.2d 863 (2013) (citing La. R.S. 14:10(1)). The determination of specific intent is a question of fact. Id., 83 So.3d at 306. Specific intent may be inferred from the circumstances and from the defendant’s actions, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim’s injuries. Id. Further, a specific intent to kill may be inferred from the intentional use of a deadly weapon such as a knife or gun. State v. Cochran, 09-85 (La.App. 5 Cir. 6/23/09); 19 So.3d 497, 508, writ denied, 09-1742 (La.3/26/10); 29 So.3d 1249.
In the present case, Defendant does not challenge the sufficiency of the evidence as to the elements of second degree murder, but rather challenges the sufficiency of the evidence establishing him as the perpetrator.
In addition to proving each statutory element of the crime charged, the State must also prove the identity of the perpetrator. State v. Williams, 08-272 (La.App. 5 Cir. 12/16/08); 3 So.3d 526, 529, writ denied, 09-143 (La.10/16/09); 19 So.3d 470. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id. Positive identification by only one witness is sufficient to support a conviction. Id.
To prove Defendant’s identity as the perpetrator of the crime, the State introduced the testimony of Williams, an eyewitness to the victim’s murder. Williams testified that he knew Defendant from the *1008 neighborhood and that he saw Defendant exit the car and discharge his weapon eleven or twelve times. Twelve .40-caliber casings, all fired from the same gun, were recovered from the scene. Williams subsequently identified Defendant as the perpetrator from a photographic lineup as well as in open court. We find this evidence sufficiently negates any reasonable probability of misidentification and, thus, the State carried its burden of proving beyond a reasonable doubt that Defendant perpetrated this crime.
| ^Defendant argues that Williams’ testimony was insufficient to support the verdict because he was not credible due to the fact that his trial testimony was inconsistent with his prior statements and grand jury testimony. Williams’ prior statements and grand jury testimony are not included in the appellate record.[3] Nonetheless, we note that it is apparent from Williams’ cross-examination that the alleged inconsistencies concerned tangential details. For instance, defense counsel claimed that Williams had testified before the grand jury that the victim had been dropped off at Williams’ house, while at trial Williams testified that he and the victim proceeded to his house together. Defense counsel also pointed out that in Williams’ statements to the police and in his grand jury testimony, he stated that the green car had been parked on the street for five minutes, but at trial Williams testified that he observed the car turn onto Millender Dr. Further, defense counsel pointed out that Williams acknowledged that his testimony during direct examination was incorrect regarding the number of people in the car. On direct examination, Williams testified that he observed three people inside the car; however, on cross-examination, he amended his testimony in accordance with his statements to the police that there were four people in the car on the night of the shooting.
Through cross-examination, the jury was made aware of these various inconsistencies; yet, in returning a guilty verdict, the jurors clearly found Williams’ trial testimony credible. It is not this Court’s function to evaluate the credibility of witnesses. Positive identification by only one witness is sufficient to support a conviction. Viewing the evidence in the light most favorable to the prosecution, we find the evidence was sufficient for any rational trier of fact to have found ^Defendant guilty beyond a reasonable doubt. Thus, we find no error in the trial court’s denial of Defendant’s motion for post-verdict judgment of acquittal.

Denial of Motion for New Trial

In Defendant’s first assignment of error, he argues the trial court erred in denying his motion for new trial, which was based on four grounds: (1) the verdict was contrary to the law and evidence; (2) the trial court erred in granting the State’s motion in limine; (3) new and material evidence was discovered after trial which probably would have changed the verdict; and (4) the ends of justice would be served by granting a new trial. On appeal, Defendant only seeks review of the trial court’s denial of his motion on the second and third grounds, namely the grant of the State’s motion in limine and newly discovered evidence.
Pursuant to La.C.Cr.P. art. 851, a motion for new trial is based upon the supposition that an injustice has been done to the defendant, and unless such injustice is shown, the new trial motion shall be denied no matter upon what allegations the *1009 motion is grounded. State v. Bazley, 09-358 (La.App. 5 Cir. 1/11/11); 60 So.3d 7, 19, writ denied, 11-282 (La.6/17/11); 63 So.3d 1039. Further, on appeal, a trial judge’s ruling on a motion for new trial will not be disturbed absent a clear showing of an abuse of discretion. State v. Richoux, 11-1112 (La.App. 5 Cir. 9/11/12); 101 So.3d 483, 490, writ denied, 12-2215 (La.4/1/13); 110 So.3d 139.
Defendant first argues that the trial court erred in denying his motion for new trial on the basis it erred in granting the State’s motion in limine, which precluded him from introducing any evidence of the dismissal of the charges against his brother and co-defendant, Jerry Davis. The State contends that under the “law of the case” doctrine, Defendant is not entitled to relief because this Court previously addressed this issue in a supervisory writ application.
| inPrior to trial, the State filed a motion in limine seeking to prevent Defendant from eliciting testimony regarding the dismissal of the charge against Jerry Davis. The trial court granted the motion. Defendant sought supervisory review of this ruling, and this Court denied relief with the following disposition:
In its complained of ruling, the trial court restrained the defense only from cross-examining the witness Sonora Williams regarding the state’s dismissal of the Jerry Davis ease. The trial court did not restrain the Sonora Williams cross-examination as to his identification of both Jerry Davis and defendant, Michael Davis, as the shooter. While the witness’ identification of Jerry Davis as the shooter is relevant, the state’s decision to dismiss its case against Jerry Davis is not. See State v. Weaver, 38, 322 (La.App. 2 Cir. 5/12/04), 873 So.2d 909; State v. Spencer, 374 So.2d 1195 (La.1979); and Garner v. State of Mississippi, 02-00391 (Miss.App.10/14/03), 856 So.2d 729.
State v. Davis, 12-723 (La.App. 5 Cir. 9/25/12) (unpublished writ disposition). The Louisiana Supreme Court subsequently denied writs. State v. Davis, 12-2108 (La.9/26/12); 98 So.3d 822.
Under the “law of the case” doctrine, an appellate court will generally not reconsider its own rulings of law on a subsequent appeal in the same case. State v. Wallace, 12-594 (La.App. 5 Cir. 2/21/13); 110 So.3d 1199, 1202, writ denied, 123 So.3d 1217 (La.10/11/13). The “law of the case” doctrine is discretionary. Id. Reconsideration of a prior ruling may be warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. Id.
In the present case, Defendant does not allege nor does the record reveal any new evidence that, indicates this Court’s previous ruling was patently erroneous or produced unjust results. Accordingly, we decline to reconsider our previous ruling. Since we have determined the trial court did not err in granting the State’s motion in limine, we likewise find the trial court did not abuse its discretion in denying Defendant’s motion for new trial on this basis.
| ^Defendant next argues that the trial court erred in denying his motion for new trial because defense counsel discovered evidence after trial that probably would have changed the guilty verdict.
In his motion for new trial, Defendant argued he was entitled to a new trial based on the discovery of evidence that corroborated his alibi. In particular, Defendant asserted that in his statement to police, he stated he was with Iriemme Windmon at a local Burger King at the time of the shooting. Although the de *1010 fense investigated this alibi prior to trial, its efforts failed to reveal any corroborating evidence. Defendant claimed that after trial, defense counsel was approached by a family member who managed to get Ms. Windmon to obtain her bank records, which indicated a charge for Burger King on the day of the shooting. Defendant argued he was entitled to a new trial based on the discovery of these records. In support of his motion, Defendant attached the bank records and two sworn affidavits by defense counsel and the defense investigator asserting that Ms. Windmon could not obtain the relevant bank records prior to trial.
The trial court denied the motion for new trial, stating that Ms. Windmon could have been called to testify that she was at the Burger King on the night of the shooting even without the documentation. The trial court noted that the submitted documents did not indicate the time at which Ms. Windmon made a purchase at Burger King.
Under La.C.Cr.P. art. 851(3), a new trial shall be granted when
[n]ew and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.
In order for a new trial to be granted based on newly discovered evidence, the evidence must have been discovered since the trial; the failure to learn of the 112evidence at the time of trial was not due to the defendant’s lack of diligence; the evidence must be material to the issues at trial; and the evidence must be of such a nature that it would probably produce an acquittal in the event of a retrial. Bazley, 60 So.3d at 21.
We find Defendant failed to satisfy all the requirements necessary to obtain a new trial based on newly discovered evidence. The record shows Defendant gave his statement to the police on November 12, 2009. He was indicted on February 25, 2010, and trial commenced on September 25, 2012. The State provided the defense with Defendant’s statement on August 16, 2010. Thus, the defense had more than two years before trial to investigate Defendant’s alibi, including the opportunity to obtain Ms. Windmon’s bank statement. Defendant has not offered any reason why he could not obtain a standard bank statement in a span of more than two years. Accordingly, we find Defendant has not demonstrated that his failure to learn of the evidence at the time of trial was not due to his lack of diligence.
Furthermore, we find Defendant has not shown the bank statement is of such a nature that it would probably produce an acquittal in the event of a retrial. The bank statement only reflects that a purchase was made at a Burger King with a debit card in the name of Ms. Windmon on October 12, 2009. The statement does not indicate who made the purchase, the time at which the purchase was made, or that the Burger King was located at such a distance from the scene that Defendant would not have been able to be at the scene at the time of the murder. Thus, we find the probative value of the bank statement to be minimal and probably would not have changed the guilty verdict, especially since Defendant was identified by an eyewitness to the crime as the perpetrator.
[! 3Accordingly, we find the trial court did not abuse its discretion in denying Defendant’s motion for new trial on the basis of newly discovered evidence.

Denial of Motion to View the■ Crime Scene

In Defendant’s third assignment of error, he argues the trial court erred in *1011 denying his motion to view the crime scene. Prior to trial, Defendant filed a “Motion for Jury to View the Scene,” under La.C.Cr.P. art. 762(2), and requested that the jury be allowed to view the crime scene because the photographs did not accurately depict the scene. The trial court denied the motion, noting that the scene is likely to have changed over time and may include overgrown vegetation or parked vehicles affecting the lines of sight that were not present at the time of the murder.
Under La.C.Cr.P. art. 762(2), sessions of court may be held at places within the parish other than the courthouse at the discretion of the court to “allow the jury or judge to view the place where the crime or any material part thereof is alleged to have occurred, or to view an object which is admissible in evidence but which is difficult to produce in court.” The decision to grant or deny a motion to have the jury view the scene of the crime is within the sound discretion of the trial court, and such a ruling will not be disturbed on appeal absent an abuse of that discretion. State v. Moore, 432 So.2d 209, 216 (La.1983), cert. denied, 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983).
In State v. Johnson, 294 So.2d 229, 230 (La.1974), the Louisiana Supreme Court found no error in the trial court’s denial of the defendant’s motion to view a burglary scene, where photographs and testimony sufficiently conveyed the relevant information. The supreme court reasoned: “We see no reason why the orderly progress of a trial should be disrupted in order to have the jury view a [ particular scene where the same information can be imparted to the jury through the use of photographs and other evidence.” Id.
In the instant case, the jury was presented with numerous photographs, a crime scene sketch, and extensive testimony detailing the scene of the crime. The photographs in conjunction with the sketch clearly reveal the layout of the scene. And, although the sketch is not drawn to scale, it indicates the relative locations of evidence as well as distances between the victim’s body and several fixed points. A review of the record and exhibits fails to demonstrate that the relevant information of this crime scene could not be accurately conveyed via the photographs, the sketch, and testimony. Additionally, it does not appear that a visit to the scene nearly three years after the offense would have been any more informative than reviewing the evidence introduced at trial. Accordingly, we find no abuse of discretion in the trial court’s denial of Defendant’s motion.

Crime Scene Sketch

In Defendant’s fourth and final assignment of error, he contends the trial court erred in allowing the jury to review the crime scene sketch during deliberations. He argues this was error because the sketch was not drawn to scale, which would permit jurors to draw incorrect inferences regarding the distances of items to each other. The State responds that the sketch was a non-testimonial exhibit which contained no verbal content and, thus, the jury was allowed to view it during deliberations under La.C.Cr.P. art. 793.
After retiring for deliberation, the jury requested to view the exhibits. The court allowed the jury to view all the exhibits except the crime scene sketch. The jurors then requested the sketch, which the trial court provided to them over Defendant’s objection.
11fiLouisiana Code of Criminal Procedure Article 793(A) provides in pertinent part: “Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or *1012 document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.” The general rule as expressed by Article 793 is that the jury is not to inspect written evidence except for the sole purpose of a physical examination of the document itself to determine an issue which does not require the examination of the verbal contents of the document. State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94); 636 So.2d 1069, 1081, writ denied, 94-1361 (La.11/4/94); 644 So.2d 1055.
The Louisiana Supreme Court has held that a map or model may be reviewed by the jury during deliberations. State v. McKinney, 174 La. 214, 140 So. 27, 28 (La.1932). The court explained:
Now a plan, plat, map, picture, photograph, or model, is simply a miniature reproduction of the physical object, or thing, which it represents; and is intended for the convenience and information of those who might otherwise wish, or be obliged, to inspect the object or thing itself. Hence whenever any plat, photograph, model, etc., is offered in evidence, it is as if the thing itself which it represents had been offered in evidence. And since, by the very terms of the Code, the jury ‘may take with them when they retire to deliberate any object * * * that requires a physical examination to enable them to arrive at a just conclusion,’ it follows that they may also take with them the miniature reproduction of such object produced for their convenience and information.

Id.

We find the sketch at issue is essentially a map or model of the crime scene. As a computer-generated sketch, it depicts, in miniature form, the relative locations of the physical evidence at the scene. And, even though the sketch is not to scale, it specifies distances between several fixed points and evidence. Further, the jury was made aware that the sketch was not to scale and viewed the sketch in | ^conjunction with the photographs of the scene. Thus, any possible misinterpretations of the sketch were minimized.
We find our ruling in State v. Lyles, 03-141 (La.App. 5 Cir. 9/16/03); 858 So.2d 35, to be distinguishable from the present case. In Lyles, we found the trial court erred in allowing the jury to view a hand-drawn diagram during deliberations. The diagram was drawn by the victim during her trial testimony and depicted the layout of the room where the offense of indecent behavior with a juvenile had occurred and the location of other individuals in the room, including the defendant. Thus, we found that the jury viewed the diagram for its verbal contents, i.e., the victim’s testimony regarding the description of the room and its occupants. In the present case, the crime scene sketch did not represent witness testimony, but rather it represented objective facts. Nonetheless, in Lyles, we found any error was harmless because the diagram did not depict what occurred and did not bear directly on an element of the crime. Id. at 49.
Additionally, we find the instant case distinguishable from State v. Calloway, 00-1230 (La.App. 5 Cir. 2/28/01); 781 So.2d 849. In Calloway, the jury was allowed to view during deliberations a map of the area and a diagram of the apartment where the murders had occurred. Unlike the present case, the map and diagram in Calloway had been annotated by witnesses. Without specifically addressing whether allowing the jurors to view the map and diagram was error, this Court determined any error was harmless since neither document related to the identification of the defendant, to his alibi defense, or to any other significant issue. Similarly, even if we were to determine in the instant case that the viewing of the crime *1013 scene sketch by the jury during deliberations was error, it would be harmless because the sketch did not relate to the identification of Defendant, to his alibi defense, or to any other significant issue.

\,.ERRORS PATENT

In accordance with La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990), we have reviewed the record for errors patent and find none that require corrective action.

DECREE

For the foregoing reasons, Defendant’s conviction and sentence for second degree murder are affirmed. We find the evidence sufficiently establishes Defendant’s identity as the perpetrator of the offense. Additionally, we find no error in the trial court’s denial of Defendant’s motion for new trial based on its granting of the State’s motion in limine or based on Defendant’s claim of newly discovered evidence. Further, we find no error in the trial court’s denial of Defendant’s motion for the jury to view the crime scene, or in the trial court’s allowing the jury to view the crime scene sketch during deliberations.

CONVICTION AND SENTENCE AFFIRMED.

. We address the issue of sufficiency of the evidence first as directed by State v. Hearold, 603 So.2d 731, 734 (La.1992), because if the appellate court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary.

. Before the commencement of trial, the court indicated that Defendant was being prosecuted pursuant to the specific intent theory of second degree murder.

. While the record indicates Williams gave two recorded statements to the police following the murder, the statements were not introduced into evidence.