JUDE G. GRAVOIS, Judge.
l.qThe defendant, Lucien Bazley, has appealed his conviction and sentence for possession of narcotics. For the reasons that follow, we affirm.

PROCEDURAL HISTORY

On April 20, 2007, the Jefferson Parish District Attorney filed a bill of information charging the defendant with Count 1, possession of marijuana (second offense), and Count 2, possession of cocaine, in violation of LSA-R.S. 40:966 C and R.S. 40:967 C, respectively. The defendant pled not guilty at arraignment on April 30, 2007. He filed a motion to appoint a sanity commission on June 11, 2007 and was found competent to stand trial on July 25, 2007. The defendant filed a motion to reappoint a sanity commission on August 27, 2007 and was again found competent to stand trial on December 11, 2007.
A hearing commenced on the defendant’s motion to suppress evidence on January 8, 2008; however, the hearing was held open at the defendant’s request. On January 28, 2008, before trial began, the suppression hearing was completed, |4after which the trial judge denied the motion. The case was subsequently tried on January 28 and 29, 2008, before a six-person jury, which ended in a mistrial when the jurors could not reach a verdict. On March 12 and 13, 2008, the case was retried before a six-person jury, which again ended in a mistrial when the jurors could not reach a verdict.
A third trial was held on March 24, 25, and 26, 2008, after which the jury found the defendant guilty as charged. On May 5, 2008, the trial judge denied the defendant’s motion in arrest of judgment and motions for a new trial. On that same date, the defendant waived sentencing delays and was sentenced to imprisonment at hard labor for four years on each count to run concurrently with one another.
Also on May 5, 2008, the State filed a multiple bill alleging the defendant to be a fourth felony offender. The defendant de *12 nied those allegations. The defendant filed a timely motion for appeal on May 9, 2008, that was granted. On July 14, 2008, a multiple bill hearing was held, after which the trial judge found the defendant to be a fourth felony offender. On July 14, 2008, the sentence on Count 2 was vacated and the defendant was re-sentenced as a multiple offender to imprisonment at hard labor for 20 years to run concurrently with the sentence on Count 1 and “any other revocation.” Following sentencing, the defendant orally moved for an appeal.

FACTS

Lt. Nicholas Huth of the Kenner Police Department testified that on February 22 and 23, 2007, he and Detective Kevin Trei-gle conducted surveillance on the defendant’s residence, located at 249 Clemson, Apartment 402, in Kenner, in response to numerous complaints of narcotics activity. The defendant was the ^target of that investigation. On February 23, 2007, Lt. Huth observed a female, later identified as Darkus Bollard, enter that apartment and leave shortly thereafter. Ms. Bollard was stopped and it was discovered that she was in possession of a small bag of marijuana that she had purchased from the defendant. As a result of his conversation with Ms. Bollard, Lt. Huth instructed Detective Treigle to obtain a search warrant for the defendant’s apartment.
After Ms. Bollard was arrested, the defendant exited Apartment 402. Lt. Huth detained him while they waited for the search warrant. After the keys to the apartment were obtained from the defendant’s pocket, Lt. Huth entered the apartment to conduct a protective sweep for officer safety and to make sure no one else was in the apartment, during which he observed a bag of marijuana floating in the toilet. Because the toilet was still flowing, it appeared to him that someone had tried to flush the marijuana down the toilet or that the toilet was defective. When the protective sweep was completed, Lt. Huth exited the apartment.
Later on, Detective Treigle called Lt. Huth and advised him that the search warrant for the defendant’s residence had been signed. Lt. Huth and other officers then re-entered the residence and searched it. Detective Treigle subsequently arrived and retrieved a clear plastic bag containing green vegetable matter from the toilet. Once the bag was retrieved, Detective Treigle observed that inside that plastic bag was another clear plastic bag that contained crack cocaine. Detective Treigle also retrieved a box of clear plastic sandwich bags and a digital scale from the apartment.
The State and the defense stipulated that if Daniel Waguespack, an expert in the identification and analysis of narcotics were called as a witness, he would testify that he tested the narcotics in this case and found them to be cocaine and marijuana.
|6Lt. Louis Mungia of the Jefferson Parish Sheriffs Office, an expert fingerprint examiner, testified that the- fingerprints from the defendant’s previous conviction of possession of marijuana on January 20, 2004 matched the defendant’s fingerprints taken in court that day.
The defendant’s redacted testimony from his first trial was read to the jury during the State’s case-in-chief. The defendant testified that the drugs found at 249 Clemson, Apartment 402, on February 23, 2007, were not his, and he had no knowledge that they were in that apartment. The defendant denied selling drugs to Ms. Bollard.
The defendant explained that, on February 22, 2007, he lived at 247 Clemson, Apartment 1, with his Uncle Donald, which was right across from 249 Clemson. The *13 defendant asserted that he did not go into Apartment 402 on February 23, 2007, as he was too busy picking up trash. The defendant contended that Melvin Anderson lived in Apartment 402. The defendant admitted having gone into Apartment 402 before February 22 and 23, 2007, to play chess and talk with Mr. Anderson.
The defendant testified that, on February 23, 2007, Lt. Huth stopped Ms. Bollard and another lady. Lt. Huth then walked over to the defendant and demanded that he put his hands behind his back. According to the defendant, Lt. Huth asked him to allow Lt. Huth to enter Apartment 402, but the defendant told Lt. Huth he could not do so because that was not his residence. The defendant testified that Lt. Huth went into Apartment 402 and when Lt. Huth came back out, he asked the defendant who jumped out of the window, and the defendant told him “Ray Vaughn”.
The defendant testified that he gave Lt. Huth the keys to his truck and permission to search it, which Lt. Huth did. The defendant denied that Lt. Huth |7got the keys to Apartment 402 from him. The defendant explained, that the door to Apartment 402 was open and anyone could have walked in. According to the defendant, Lt. Huth told the defendant that if he found anything in that apartment, he would charge him with it. The defendant said that there was nobody in that apartment when the police went in. The defendant denied telling Lt. Huth and Detective Treigle that he subleased Apartment 402.
Additionally, the defendant testified that he had many prior convictions: on April 4, 1995, he pled guilty to possession of narcotics; on August 31, 1995, he pled guilty to possession of cocaine; on March 28, 1996, he pled guilty to possession with the intent to distribute cocaine and marijuana, resisting an officer, and battery on an officer; on January 20, 2004, he pled guilty to possession of marijuana; and on September 13, 2004, he pled guilty to possession of cocaine.
Lt. Huth and Detective Treigle testified that they did not recall the defendant giving them keys to a truck, and that they did not search a truck that day.
After the State rested its case, the defense called Sherman McGee as a witness. Mr. McGee testified that he walked into Apartment 402 on the day in question with his brother-in-law, Nicholas, another man named “Lipinga,” and two females to have a “good time,” and that nobody else was in that apartment at that time. He testified that after they saw the police, he, his brother-in-law and “Lipinga” went out the back window and jumped the fence, while the two females walked out of the front door. Mr. McGee 'further testified that there were no drugs “in the area”, but that “Lipinga” had marijuana. Mr. McGee claimed that he knew the defendant, and that the apartment he went into that day was not the defendant’s apartment. Mr. McGee admitted having prior narcotics convictions.
I ¡¡COUNSELED ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, the defendant argues that the trial judge erroneously told the jury that the defendant’s testimony, which was about to be read to them, was taken in a prior trial that resulted in a mistrial. The defendant further argues that this error was not harmless and, therefore, his conviction must be overturned. The State responds that defense counsel waived the protections afforded to him by law and jurisprudence by requesting that the trial judge inform the jury that the testimony was given at a previous trial.
*14 On January 29, 2008, during the first trial, the defendant testified on his own behalf. The case, however, ended in a mistrial. On March 12, 2008, the case was tried for a second time. On the morning of the first day of the second trial, the prosecutor told the trial judge that the State intended to enter into evidence a transcript of the defendant’s testimony from the first trial under the authority of State v. Reed, 324 So.2d 373 (La.1975).
The prosecutor stated that, pursuant to Reed and its progeny, he would redact the transcript to delete all references that the testimony was taken during a trial and that he would tell the jury that the testimony was taken from a previous hearing in this matter. The defense counsel objected, noting that the defendant had previously given testimony regarding his prior bad acts and convictions. The State said the case law did not address whether prior convictions were admissible.
The trial judge stated that she was not going to admit testimony of the defendant’s prior convictions, since the case law did not address it. Rather, testimony of the defendant’s bad acts and/or arrests and convictions would be redacted from the transcript, unless he took the stand. The defense counsel then stated that he had no problem with the State using the prior testimony regarding bad acts if the defendant took the stand.
|9The defense counsel agreed to the State’s introduction of the part of the transcript wherein the defendant admitted to having a prior conviction for possession of marijuana, since that was an element of the present offense of possession of marijuana, second offense.
After hearing arguments of counsel, the trial judge ruled in favor of the State, citing State v. Reed, supra. She also ruled that the transcript was to be redacted so it did not reflect that it was from a previous trial. She said that the transcript would also be redacted to delete references to any bad acts, arrests, or criminal convictions.
The defense counsel noted his objection to the transcript being admitted into evidence. The prosecutor objected to the trial judge’s ruling whereby she did not allow testimony of the prior convictions to be admitted, noting that the defendant put his credibility at issue when he took the stand under oath. The trial judge again stated that she would not allow testimony regarding prior convictions to be admitted. The prosecutor said he did not redact the portion of the transcript regarding the defendant’s prior marijuana conviction because it was an element of the crime for which the defendant was being tried. The trial judge allowed testimony regarding the predicate conviction.
On March 13, 2008, the second day of the second trial, there was additional discussion regarding the admission of the defendant’s testimony from the first trial. The trial judge ruled that, based on State v. Reeder, 95-2407 (La.App. 4 Cir. 7/16/97), 698 So.2d 56, and State v. Woods, 01-1995, p. 14 (La.App. 4 Cir. 10/30/02), 830 So.2d 559, 566, writ denied, 03-0055 (La.10/3/03), 855 So.2d 307, she was going to permit the State to introduce a redacted copy of the defendant’s prior sworn testimony removing any mention of a previous trial. She also ruled |10that reference to the prior convictions would remain because Reeder and Woods permitted it.
The trial judge commented that in a pretrial conference, the defense counsel said he understood and read the cases as she did, but that he might want to waive the protections those two cases afforded and tell the jury that the testimony was from a previous trial. The defense counsel ob *15 jected to the introduction of the transcript and the prior bad acts or crimes.
The prosecutor, defense counsel, and trial judge then discussed the redactions that were made and would be made to the transcript. When the prosecutor said he was ready for the transcript to be read to the jury and placed into evidence, the trial judge asked defense counsel whether he wanted the protections afforded by the case law, defense counsel responded that they were going to waive the protections.
After much discussion, the trial judge said she was going to allow the defense to waive the protections that Reeder and Woods afforded. She stated that she was going to instruct the jury that the testimony was from a trial and that it resulted in a mistrial. The defense counsel agreed. The trial judge said that she was going to appease the State by not telling the jury that the prior trial ended in a hung jury, to which defense counsel objected. This second trial ended in a mistrial.
On March 24, 2008, during the third trial, the prosecutor said that he intended to offer into evidence a copy of the transcript of the defendant’s testimony from his first trial. He stated that they had argued that motion at the second trial, and he wanted to re-urge it again to make it clear for the record. The defense counsel objected. The trial judge said they had done the research previously and her ruling was that it was permissible to admit the transcript into evidence. The defense counsel objected to the admission of the transcript.
In On March 25, 2008, on the second day of the third trial, the prosecutor offered the redacted version of the defendant’s prior trial testimony into evidence. As he did in the second trial, the prosecutor again argued that, under State v. Reed, the jury could hear the prior testimony as long as there was no reference to it being a trial. The trial judge said that the jurors would be given the feeling that the prior sworn testimony was not from a trial. She noted, however, that the defense still wished the jury to know that the testimony was from a trial that resulted in a mistrial.
The trial judge stated that she wanted the record to be clear that they would have given the defendant the protections the law afforded; however, the defense counsel and the defendant decided to waive those protections and wanted the jury to know that this testimony was from a prior trial. The prosecutor wanted it noted for the record that he objected to the jury being informed that the testimony was from a prior trial. The defense counsel objected to the entire transcript being entered, and the trial judge noted his ongoing objection. The defense counsel told the trial judge she could use whatever argument he made at the previous trial, and that she did not “have to go through it.”
The trial judge admitted the testimony into evidence and advised the jury that “Ms. Burke” would read the testimony of the defendant that was taken at a prior trial that ended in a mistrial. She said she would read her part and Ms. Burke would read everything else. Afterwards, the transcript of the defendant’s prior testimony was read. The prosecutor subsequently introduced into evidence the redacted version of the defendant’s prior trial testimony that was read into the record and a copy of the testimony that was published to the jury. These are identical. The defense counsel had no objection.
|12In State v. Reed, 824 So.2d 373, 379 (La.1975), cited by both the defendant and the State in their briefs, the defendant argued that the trial judge erred by allowing the transcript of his testimony from a previous trial to be read to the jury. The *16 Louisiana Supreme Court stated that, contrary to the defendant’s assertions, the long-standing federal rule was that a defendant in a criminal case who took the stand in his own behalf and testified without asserting his privilege against self-incrimination thereby waived the privilege as to the testimony given so that it may be used against him in a subsequent trial of the same case. Id. at 380. The Court held that the introduction of the transcript did not violate the defendant’s privilege against self-incrimination. Id.
The Reed Court also found that a defendant who takes the stand in his own defense is not protected by LSA-C.Cr.P. art. 857[1] when the State, at a subsequent trial on the same charge, seeks to introduce that testimony to a jury, so long as the State does not make it apparent to the jury that the testimony was from a prior trial. Id. at 381. Additionally, the Supreme Court noted that the prosecutor was careful to describe the transcript as the testimony of the defendant in this matter on a prior occasion when referring to the transcript in front of the jury, however, it was defense counsel who made it plain to the jury through his comments that the testimony was given by the defendant testimony at a prior trial. Id. Finding that this testimony was relevant to prove the elements of the State’s case, the Court held that it was admissible in the State’s case-in-chief. Id.
Similarly, in State v. Woods, 01-1995, p. 14 (La.App. 4 Cir. 10/30/02), 830 So.2d 559, 566, writ denied, 2003-0055 (La.10/3/03), 855 So.2d 307, the defendant argued that the trial court erred in overruling his objection to the State’s reading of | iHan un-redacted version of his testimony from his first trial, containing references to his pri- or convictions. The Fourth Circuit found that Reed did not specifically address the issue of prior convictions. However, the Fourth Circuit concluded that Reed was consistent with the proposition that a defendant’s admission of prior convictions while testifying at a previous trial was admissible as part and parcel of his testimony in a subsequent trial and found no error in the trial court’s admission of the un-redacted version of the defendant’s testimony in his first trial. Id., 01-1995 at 15, 830 So.2d at 568.
In the instant case, the defendant argues that he was prejudiced by the trial court telling the jury “there had not only been a prior trial but that it had ended in a mistrial.” The defendant reasons that this could have indicated to the jury that the defendant had taken up much civic resources to bring him to justice, that the state must really believe in this case to try it again and/or that the defendant nearly escaped on a previous mistrial which sounded like a technicality.
We find no merit to the defendant’s argument. Once the jury was told that this testimony was taken at a prior trial of the defendant, the jury was obviously aware that that trial did not result in the defendant being convicted. Moreover, as the State points out, the defense counsel requested that the jury be informed that the prior trial resulted in a mistrial. The record reflects:
THE COURT:
... The defense still is of the position in this trial that they wish the jury to know that this was, in fact, a trial and it resulted in a mistrial ... So I just want the record to be clear that we would have given Mr. Bazley the protections *17 that the cases afforded. However, Mr. Soignet [defense counsel] and his client have decided to waive those protections and they, in fact, wanted the jury to know that this was, in fact, from a prior trial which is why they now know that.
The State objected to the jury being informed that the transcript was from a prior trial. The trial court stated:
]14... I want this record to be clear of, you know, why we’re doing what we’re doing and so, of course, in our previous trial this argument was well flushed out but this is a new trial and I want the record to be clear that those are the cases the Court is relying on and the reason why we have given the jury the instruction that it is the result — the sworn prior testimony is a result of a previous trial that ended in a mistrial is because that, in fact, is what the defense wanted the jury to know.
To which the defense counsel responded: “That is correct. I do object to the transcript at [sic] being entered.”
Thus, the record reflects that the defense counsel objected to the admission of the transcript of the defendant’s prior trial testimony, however, once the trial court decided that the transcript would be admitted, the defense counsel and the defendant waived the protections afforded to him by law and jurisprudence, and requested that the jury be informed that the testimony was given during a prior trial that did not result in his conviction. The instant scenario is similar to Reed wherein the Court noted that the defense counsel, and not the prosecutor, made it plain to the jury that the statement was the defendant’s testimony at a former trial. Thus, we find that the trial judge did not err in the instant case by telling the jurors that the transcript of the defendant’s testimony was from a previous trial that ended in a mistrial since the record reflects that the defense counsel and the defendant himself waived the protections afforded by Reed and its progeny by asking the trial judge to tell the jury that the transcript of the defendant’s testimony was from a previous trial that ended in a mistrial. This assignment of error is without merit.

COUNSELED ASSIGNMENT OF ERROR NUMBER TWO

By this assignment of error, the defendant argues that the trial judge erred by denying his Motion for a New Trial. He explains that the motion was based on the fact that he did not live in the apartment where the drugs were found, and that his sister testified to that fact at the hearing on the motion. The defendant further |1Bargues that the evidence was insufficient to support the verdict arguing (1) as the defendant’s sister testified the defendant did not live in the apartment where the drugs were found; (2) the keys to the apartment allegedly found on him were not placed into evidence; (3) no drugs, cash, or contraband were found on him; (4) the evidence indicated that the drugs belonged to other men inside the house; and (5) the State failed to prove that he intentionally possessed the drugs. The State responds that the evidence was sufficient to establish that the defendant constructively possessed the drugs found in the apartment.
On April 1, 2008, the defendant filed a “Motion in Arrest of Judgment and Alternatively Motion for New Trial,” arguing that the verdict would result in an injustice to the defendant if permitted to stand, because the evidence did not support a conviction of the crime.
The defendant filed a pro se motion for a new trial on April 3, 2008. In that motion, the defendant contended that a new trial should be granted because (1) the jury was “all white”; (2) the verdict was contrary to the law and the evidence in that there was no evidence to support the claim that the *18 dwelling was the defendant’s nor any evidence to show that the defendant intended to possess or possessed any drugs; (3) there was new and material evidence not discovered before or during trial in that there was evidence that could prove the actual residence of the defendant; and (4) the defendant had discovered since the verdict a prejudicial error in that the defendant’s motion to quash based on double jeopardy was erroneously denied by the trial judge.
The defense counsel filed another Motion for New Trial on May 1, 2008. In that motion, based on newly discovered evidence, the defense counsel noted that prior to trial, the defendant’s sister had information relative to the defendant’s residence at the time of the commission of the crime; however, her whereabouts [ lfiwere unknown at that time. The defense counsel contended that it was subsequently discovered that she was in the Jefferson Parish Correctional Center and that if she were able to testify, she would say that the defendant did not reside in the apartment where the drugs were found, but rather, the defendant resided with his uncle in the same apartment complex. The defense counsel further contended that this would have confirmed the defendant’s testimony and argued that no testimony other than that of the defendant was heard by the jury to refute the testimony of the State’s witnesses, and that this played a significant role in their guilty verdicts. The defense counsel also argued that the evidence did not support a conviction of the crime charged.
A hearing on the motions for a new trial was held on May 5, 2008. The record reflects that only the allegations of newly discovered evidence were urged. In support of the motion, the defense counsel called Delores Bazley to testify as to “newly obtained evidence.” Ms. Bazley testified that the defendant was her brother, and that the defendant previously stayed with her Uncle Donald, who was now deceased, on Clemson. She did not know the address, but she knew it was a “double complex,” and that the defendant lived all the way back on the right hand side. Ms. Bazley explained that the defendant never lived in the apartment on the left hand side. She asserted that when the defendant came home from jail, she went to see the defendant at her Uncle Donald’s house. Ms. Bazley knew Melvin Anderson, and she also knew that Anderson stayed on the left hand side. On cross-examination, she testified that the defendant knew where she lived and knew how to get in touch with her if he so desired.
Following Ms. Bazley’s testimony and arguments by counsel, the trial judge denied the motion for a new trial without providing reasons. The defense counsel objected.
[17AIthough the defendant raised several grounds in his written motions as the basis for his motion for a new trial, as in the hearing on the motion, on appeal the defendant only argues that his motion should have been granted based on the insufficiency of the evidence and newly discovered evidence.

Sufficiency of the evidence

The question of sufficiency of the evidence is properly raised by a motion for post-verdict judgment of acquittal. LSA-C.Cr.P. art. 821; State v. Hampton, 98-331, p. 12 (La.4/23/99), 750 So.2d 867, 880, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999). The defendant filed a “Motion in Arrest of Judgment and Alternatively Motion for New Trial,” and two additional motions for a new trial.[2]
*19 A motion for a new trial is based on the supposition that injustice has been done the defendant and, unless such is shown to have been the case, the motion shall be denied, no matter upon what allegations it is grounded. LSA-C.Cr.P. art. 851. The trial court’s ruling on a motion for a new trial will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Delagardelle, 06-898, p. 6 (La.App. 5 Cir. 4/11/07), 957 So.2d 825, 829, writ denied, 07-1067 (La.11/21/07), 967 So.2d 1154.
LSA-C.Cr.P. art. 851(1) provides that, on motion of the defendant, the court shall grant a new trial whenever the verdict is contrary to the law and the evidence. A denial of a motion for new trial based on the verdict being contrary to the law and the evidence is not subject to review on appeal. State v. Condley, 04-1349, p. 11 (La.App. 5 Cir. 5/31/05), 904 So.2d 881, 888, writ denied, 05-1760 (La.2/10/06), 924 So.2d 163. The Louisiana Supreme Court and this Court, however, 118have addressed the constitutional issue of the sufficiency of the evidence under this circumstance. Id. Therefore, we find that the denial of the defendant’s motion for new trial based on the sufficiency of the evidence is properly before this Court on review.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002), citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This applies whether the evidence is direct or circumstantial or a mixture of both. Id.
The rule as to circumstantial evidence is that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” LSA-R.S. 15:438. The reviewing court does not determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83. Rather, the reviewing court must determine whether “the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.” Id.
In order to support a conviction of second offense possession of marijuana, the State must prove that the defendant was in possession of marijuana, that the defendant knowingly possessed it, and that he had a prior conviction for possession of marijuana. LSA-R.S. 40:966(C); LSA-R.S. 40:966(E)(2); State v. Jones, 08-20, p. 8 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 241. In order to support a conviction of possession of cocaine, the State must prove that the defendant was in | ^possession of the cocaine and that the defendant knowingly possessed it. LSA-R.S. 40:967(C); State v. Wright, 05-477, p. 5 (La.App. 5 Cir. 12/27/05), 920 So.2d 871, 874-75, writ denied, 06-1141 (La.2/16/07), 949 So.2d 404.
On appeal, the defendant does not contest the proof of his prior conviction for possession of marijuana. Rather, he contends that the evidence was insufficient *20 under the Jackson standard that he constructively possessed the marijuana and cocaine found in the apartment.
Guilty knowledge is an essential element of the crime of possession of contraband. State v. Proctor, 04-1114, p. 6 (La.App. 5 Cir. 3/29/05), 901 So.2d 477, 482. Because guilty knowledge is a state of mind, it need not be proven as fact, but may be inferred from the circumstances. Id.
The element of possession may be established by showing that the defendant exercised either actual or constructive possession of the drug. Id. A person not in physical possession of the drug is considered to be in constructive possession of a drug, although it is not in his physical custody, when the drug is under that person’s dominion and control. Id. A subject can have constructive possession if he jointly possesses drugs with a companion and if he willfully and knowingly shares with his companion the right to control the drugs. State v. Lewis, 04-1074, p. 7 (La.App. 5 Cir. 10/6/05), 916 So.2d 294, 299, unit denied, 05-2382 (La.3/31/06), 925 So.2d 1257.
The mere presence of the defendant in the area where a controlled dangerous substance is found does not constitute constructive possession. State v. Jones, 04-1258, p. 7 (La.App. 5 Cir. 4/26/05), 902 So.2d 426, 431. However, proximity to the drug may establish a pri-ma facie case of possession when colored by other evidence. Id. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession | aninclude: (1) the defendant’s knowledge that illegal drugs were in the area; (2) his relations with the person found to be in actual possession; (3) the defendant’s access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) the existence of paraphernalia; and (6) evidence that the area was frequented by drug users. State v. Proctor, 04-1114 at 7, 901 So.2d at 482.
In the instant case,, the State presented evidence at trial that the defendant lived at Apartment 402, that he was seen leaving that apartment just prior to the drugs being found in the toilet, and that no one else was in that apartment after the defendant exited it. Lt. Huth testified that, on February 22 and 23, 2007, they were conducting surveillance of 249 Clemson, Apartment 402, in response to numerous complaints of narcotics activity. Lt. Huth testified that he conducted surveillance of that apartment on numerous occasions before February 23, 2007, and had seen the defendant entering and leaving that apartment. Lt. Huth recalled that sometimes the defendant used a key to gain entry, but occasionally, the defendant knocked and someone let him in. Lt. Huth testified that, prior to February 23, 2007, the defendant said he lived at that apartment, and that he subleased it from another person. Detective Treigle saw the defendant walk in and out of that apartment several times while he was conducting surveillance on February 23, 2007 and he did not observe the defendant use a key. Detective Trei-gle maintained that the defendant was the only person he ever remembered going into Apartment 402.
Further, Lt. Huth testified that the defendant had the key to that apartment in his pocket on February 23, 2007, the date of his arrest, which the officers used to enter the apartment. Lt. Huth indicated that the defendant exited that apartment shortly before the marijuana and cocaine were found in the toilet, and that there |2¡was no one else in the apartment when Lt. Huth went inside to conduct a protec *21 tive sweep. Lt. Huth did not see or hear anybody trying to escape that day.
Additionally, Entergy’s custodian of records testified that the electricity for 249 Clemson Drive, Apartment 402, was placed in the defendant’s name on February 23, 2007, after a request to do so was received on February 21, 2007. Moreover, Gerard Keller, the manager of the property at 247 and 249 Clemson, testified that Melvin Anderson went into the office of the complex and stated that the defendant was taking over the lease of Apartment 402. Mr. Keller explained that he went to Apartment 402 during February of 2007 on five occasions and saw the defendant there. Mr. Keller spoke to the defendant because he had not paid the rent for February, and the defendant said he was “working on it.” Whenever Mr. Keller knocked on the door of that apartment, the defendant answered it.
Mr. Keller testified that the defendant finally paid the rent for February 2007 with a money order with the defendant’s name on it. Additionally, Mr. Keller testified that Donald Thompson was the tenant of 247 Clemson, that he never saw the defendant in that apartment, and that he had no record of the defendant living at 247 Clemson, Apartment 1.
The defendant presented evidence to show that he did not live in Apartment 402. Sherman McGee testified that he and others went into Apartment 402 on the day in question to have a “good time,” that he and two other men jumped out the back window when they saw the police, and that the marijuana belonged to one of those men. Clearly, the jury found the testimony of the State’s witnesses to be credible and rejected that of the defendant and his witnesses. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Baker, 01-1397, pp. 4-5 (La.App. 5 Cir. 4/30/02), 816 So.2d 363, 365. It is not the function of the appellate court to evaluate the credibility of witnesses, nor to | ^overturn the trial court on its factual determination of guilt. State v. Gentras, 98-1095, p. 9 (La.App. 5 Cir. 3/30/99), 733 So.2d 113, 118, writ denied, 99-1302 (La.10/15/99), 748 So.2d 464.
We find that the evidence presented by the State was sufficient for the jury to conclude under the Jackson standard that the defendant exercised dominion and control over Apartment 402 and the marijuana and cocaine found therein sufficient to constitute constructive possession. As such, we find no error in the trial court’s denial of the defendant’s motion for a new trial on the basis of insufficiency of the evidence.

Newly discovered evidence

LSA-C.Cr.P. art. 851(3) provides that on motion of the defendant, the court shall grant a new trial when “[n]ew and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty[.]” As such, when the motion for a new trial is based on newly discovered evidence, the following four requisites must be met: (1) the evidence must have been discovered since the trial; (2) the failure to learn of the evidence at the time of trial was not due to defendant’s lack of diligence; (3) the evidence must be material to the issues at trial; and (4) the evidence must be of such a nature that it would probably produce an acquittal in the event of a retrial. State v. Dixon, 07-915, p. 16 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 156, writ denied, 08-0987 (La.1/30/09), 999 So.2d 745.
*22 The trial court’s ruling as to whether these requisites are met is entitled to great weight and a denial of a motion for new trial will not be disturbed on appeal absent a clear abuse of that discretion. State v. McClain, 04-98, p. 11 (La.App. 5 23Cir. 6/29/04), 877 So.2d 1135, 1142, unit denied, 04-1929 (La.12/10/04), 888 So.2d 835.
In State v. Lyles, 03-141, p. 21 (La.App. 5 Cir. 9/16/03), 858 So.2d 35, 52, quoting Mesarosh v. United States, 352 U.S. 1, 9, 77 S.Ct. 1, 5, 1 L.Ed.2d 1 (1956) and State v. Cavalier, 96-3052 (La.10/31/97), 701 So.2d 949, 951, this Court noted the following regarding newly discovered evidence that merely affects credibility:
Newly discovered evidence affecting only a witness’ credibility ordinarily will not support a motion for a new trial, because new evidence which is ‘merely cumulative or impeaching’ is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial.
In the instant case, the defense counsel stated in his motion for a new trial that the defendant informed him prior to trial that his sister had information relative to his residence at the time of the commission of the offense. Clearly, this evidence was not discovered since the trial. Additionally, the defendant’s sister’s testimony at the hearing on the motion for a new trial that the defendant did not live at the apartment in question was cumulative to that of the defendant and Mr. McGee that the defendant did not live in Apartment 402. Also, it does not appear that the defendant’s sister’s testimony regarding the defendant’s residence would probably produce an acquittal in the event of a retrial, considering the strong evidence of the defendant’s guilt, as was discussed previously. For these reasons, we find that the motion for a new trial was not erroneously denied on the basis of newly discovered evidence.

PRO SE ASSIGNMENT OF ERROR

The defendant argues in his pro se brief that the trial court erred by denying his motion to suppress the evidence. He contends that it was never established | ^whether he was detained or arrested during his physical encounter with the officer; however, it is his belief that he was arrested because he was no longer free to leave when the officer approached him. The defendant further contends that the time of arrest must be ascertained in order to determine whether his arrest was lawful and whether the evidence was admissible. He asserts that the officer unlawfully removed items from his person prior to an actual arrest and that any evidence thereafter obtained was fruit of the poisonous tree.
On appeal, the defendant appears to be arguing that the .officers unlawfully detained him or arrested him without probable cause, then illegally entered Apartment 402 without a search warrant, found the marijuana in the toilet therein, and arrested him for possessing the marijuana found in the apartment.
The record reflects that on June 7, 2007, the defense counsel filed omnibus motions, including a motion to suppress confession, identification, and physical evidence, arguing that the evidence was seized unlawfully because a warrant was issued without probable cause, or the evidence was seized without a valid warrant, or the evidence was seized without a valid exception to the warrant requirement and without probable cause to either arrest the defendant or search the premises, persons, vehicles, or other areas.[3] On September 4, 2007, the *23 defendant filed a pro se motion to suppress the evidence arguing that his arrest violated the U.S. and Louisiana Constitutions because there was no probable cause for his arrest.
On January 8, 2008, Detective Treigle and Lt. Huth testified at the hearing on the motion to suppress evidence, and their testimony at the hearing was very similar to their trial testimony. However, there was additional testimony elicited at the hearing that was not elicited at trial.
lasAt the hearing, Detective Treigle testified that he applied for a search warrant for 249 Clemson, Apartment 402, because he and Lt. Huth received information from a reliable confidential informant on February 22, 2007, that the defendant was selling narcotics from his residence. That informant had previously provided him with information that had led to arrests and convictions. Also, a criminal history inquiry revealed that the defendant had several arrests and convictions for possession of narcotics.
Lt. Huth testified at the hearing that, when he and another officer stopped Ms. Bollard, the female who was seen leaving the defendant’s apartment, she stated that she was in possession of marijuana and that she had purchased it from the defendant for ten dollars inside that apartment. Lt. Huth called Detective Treigle to the scene. Ms. Bollard then made the same inculpatory statement to Detective Treigle. Based on that statement, Detective Treigle prepared an application for a search warrant for the defendant’s residence that was granted and signed. Lt. Huth did not think that anything other than keys to the apartment was found on the defendant while the defendant was being detained outside his apartment.
After the testimony was completed, the defense counsel asked for the hearing to be left open, so he could call the other officers. The State objected, but the trial judge allowed the hearing to remain open.
On January 28, 2008, before trial began, the suppression hearing resumed and the defense counsel re-called Detective Treigle and Lt. Huth as witnesses. Following their testimony, the defense counsel argued that the officers indicated that they went into the apartment and retrieved an item prior to obtaining a search warrant. He also argued that it was impossible for the signing of the search warrant and the time of the arrest to be at exactly the same time. The State ^responded that the timing of the events was as follows: the defendant was detained, the residence was secured, and the officers got a search warrant for the residence. Once the warrant was signed, the officers executed the search warrant. The defense counsel replied that it was impossible for Detective Treigle to call Lt. Huth and for Lt. Huth to search the apartment to gather evidence and arrest the defendant at exactly the same time, unless Lt. Huth had gone into the building earlier and obtained the evidence for the arrest. After hearing arguments of counsel, the trial judge denied the motion to suppress evidence without providing reasons.
Both the Fourth Amendment to the Constitution of the United States and Article I, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. State v. Roche, 05-237, p. 7 (La.App. 5 Cir. 4/25/06), 928 So.2d 761, 765, unit denied, 06-1566 (La.1/8/07), 948 So.2d 120. Warrantless searches and seizures are unrea *24 sonable-per se unless justified by one of the specific exceptions to the warrant requirement. Id. The State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703 D; State v. Honeycutt, 08-126, p. 6 (La.App. 5 Cir. 5/27/08), 987 So.2d 250, 253. Trial courts are vested with great discretion in ruling on a motion to suppress, and, consequently, the ruling of a trial judge on a motion to suppress will not be disturbed absent an abuse of that discretion. State v. Long, 03-2592, p. 5 (La.9/9/04), 884 So.2d 1176, 1179, cert. denied, 544 U.S. 977, 125 S.Ct. 1860, 161 L.Ed.2d 728 (2005). In reviewing the trial court’s ruling on a motion to suppress, the appellate court may consider the evidence at the motion hearing and at trial. State v. Imbraguglio, 08-64, p. 11 (La.App. 5 Cir. 5/27/08), 987 So.2d 257, 264.
|a7The first issue is whether the defendant was arrested or detained when he exited his apartment and was handcuffed.
An arrest occurs when the circumstances indicate intent to affect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Gibson, 97-1203, p. 6 (La.App. 5 Cir. 3/25/98), 708 So.2d 1276, 1280, citing State v. Raheem, 464 So.2d 293, 296 (La.1985). A seizure is an arrest, rather than an investigatory stop, when a reasonable person in the defendant’s position would have understood the situation to be a restraint on freedom of movement of the degree that the law associates with a formal arrest. State v. Cojoe, 01-2465 (La.10/25/02), 828 So.2d 1101, 1104. However, the use of actual restraint does not, alone, transform a street encounter between the police and a citizen into an arrest because an investigatory stop necessarily “involves an element of force or duress, temporary restraint of a person’s freedom to walk away.” State v. Broussard, 00-3230, p. 3 (La.5/24/02), 816 So.2d 1284, 1286 (per curiam). Although a seizure occurs for Fourth Amendment purposes either when an individual has been subjected to physical restraint or when he submits to the assertion of official authority,[4] no bright-line rule exists for distinguishing between investigatory stops, characterized by brief restraint imposed on a lesser showing of reasonable suspicion,[5] from arrests based on probable cause. State v. Cojoe, 828 So.2d at 1103.
In the instant case, the officers’ testimony states that the defendant was detained when he exited his apartment. Lt. Huth testified at the suppression hearing that the defendant was detained, not arrested, in front of his residence until he received notice that the search warrant had been signed and until the residence was secured. Lt. Huth testified that when the defendant exited his residence, he | ^approached the defendant and detained him becausé he had already made the determination that they were going to arrest the defendant. Lt. Huth also testified that as soon as the officers approached the defendant, they handcuffed him as he “was under arrest.”
Detective Treigle testified that the police report indicated the defendant was arrested at “15:22 hours”. He admitted, however, that he did not physically arrest the defendant at that time. The detective explained that he put that time in the *25 report because that was the time the search warrant was signed, and that was the time they had legal authority to seize any evidence located inside the residence. He assumed the defendant was placed under arrest once the search warrant was signed.
However, we find that the defendant was “arrested” when he exited his apartment and the officer handcuffed him, as the circumstances indicated intent to affect an extended restraint on the defendant’s liberty. State v. Gibson, supra.
We now turn to the issue of whether the officers had probable cause to arrest the defendant.
A warrantless arrest must be based on probable cause. Probable cause to arrest exists when the facts and circumstances within an officer’s knowledge, and of which he has reasonable trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed or is committing a crime. State v. Narcisse, 01-49, pp. 4-5 (La.App. 5 Cir. 6/27/01), 791 So.2d 149, 152, unit denied, 01-2231 (La.6/14/02), 817 So.2d 1152, citing, State v. Serrato, 424 So.2d 214 (La.1982).
The testimony reveals that Lt. Huth received information from a reliable confidential informant on February 22, 2007, that the defendant was selling narcotics from his residence. A criminal history inquiry revealed that the |Mdefendant had several arrests and convictions for possession of narcotics. The officers conducted surveillance on the defendant’s residence and, on February 28, 2007, Lt. Huth saw a female enter that residence and exit shortly thereafter. After stopping the female, she admitted that she had just purchased marijuana from the defendant for ten dollars in his residence. Thus, we find that these facts justified the officer’s belief that the defendant had just committed a crime and there was probable cause to arrest the defendant.
The next issue is whether the officer unlawfully searched the defendant’s person and retrieved items (keys) before the defendant was actually arrested.
The testimony was unclear as to how the officers came into possession of the keys to the apartment. Lt. Huth testified at the suppression hearing that he did not believe anything other than keys to the apartment was found on the defendant while he was being detained outside of his apartment, although at trial Lt. Huth testified that the defendant provided them with keys that were in his pocket after he was detained.
A search incident to a lawful arrest is a well-recognized exception to a warrantless search. State v. Grimes, 09-2, p. 5 (La.App. 5 Cir. 5/26/09), 16 So.3d 418, 423, writ denied, 2009-1517 (La.3/12/10), 28 So.3d 1023. In the instant case, we find that, even assuming that the officers removed the keys from the defendant’s pocket after he was detained, because the officers had probable cause to arrest the defendant at that time, the removal of the keys from the defendant’s person was permissible as a search incident to a lawful arrest.[6]
In light of the foregoing, we find that the trial judge did not abuse her discretion by denying the motion to suppress the evidence.

*26
\ ?,«ERROR PATENT DISCUSSION

The defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether the defendant makes such a. request. This review reveals errors patent.

Sentencing/revocation

The transcript shows that the trial judge ordered the enhanced sentence to run concurrently with the sentence on Count 1 and “any other revocation.” The commitment reflects that the trial judge ordered the enhanced sentence to run concurrently with the sentence on Count 1 and “any other revocation sentence the Defendant maybe [sic] serving.” In the event of a conflict between the minute entry and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
While there is no prohibition against a trial court ordering a sentence to run concurrent with a parole revocation, LSA-C.Cr.P. art. 901(C)(2) states that only the judge who revokes the probation can order the sentence on a probation revocation to run either concurrent or consecutively with the sentence on the later conviction. State v. Bruce, 03-918, p. 8 (La.App. 5 Cir. 12/30/03), 864 So.2d 854, 859.
In a similar case, State v. Campbell, O8-1226, p. 9 (La.App. 5 Cir. 5/26/09), 15 So.3d 1076, 1081, unit denied, 09-1385 (La.2/12/10), 27 So.3d 842, in an error patent review, this Court found that the defendant’s enhanced sentence was illegal and indeterminate because the trial court ordered it to run concurrent with “any parole violation or probation violations (the defendant) may have, or revocations.” | si This Court stated that only the judge who revoked the probation could order the sentence on a probation revocation to run either concurrently or consecutively with the sentence of a later conviction. This Court also found that, while there was no prohibition against the trial judge ordering a sentence to run concurrent with a parole revocation, the sentence was indeterminate because the defendant’s parole status was unclear. Based on the foregoing, this Court vacated the illegal portions of the defendant’s enhanced sentence making the sentence run concurrently with any proba-tions or probation revocations. This Court further remanded the matter to the trial court to clarify the defendant’s parole and/or probation status. Id., 08-1226 at 11, 15 So.3d at 1082-83.
In the instant matter, we find that the sentence is indeterminate because the defendant’s parole and/or probation status is unclear. Accordingly, we remand this matter to the trial court to clarify the defendant’s parole and/or probation status. Campbell, supra. Further, we amend the sentence to vacate the portions of the defendant’s enhanced sentence stating that the sentence run concurrently with “any other revocation” because the trial court lacked authority to order the defendant’s enhanced sentence to be served concurrently with any sentence the defendant received in a probation revocation proceeding. Campbell, supra.
. Multiple offender rights
The record reflects that the trial judge did not advise the defendant of his multiple offender rights, as required by LSA-R.S. 15:529.1, which provides that the trial court shall inform the defendant of the allegations contained in the information and of his right to be tried as to the truth thereof according to law, and shall require the offender to say whether the allegations are true. LSA-R.S. 15:529.1 implicitly requires that the trial court ad *27 vise the defendant of his right to remain silent. However, in the instant case, we find that the failure of the trial 1 S2court to advise the defendant of his right to a trial and to remain silent was harmless error because the defendant denied the allegations of the multiple bill, and because his multiple offender status was established by competent evidence offered by the State at the hearing, rather than by the admission of the defendant. See State v. Muhammad, 03-419 (La.App. 5 Cir. 6/29/04), 880 So.2d 29, 35, unit denied, 04-2082 (La.1/7/05), 891 So.2d 669.

CONCLUSION

For the foregoing reasons, the defendant’s convictions are affirmed. The defendant’s sentence is amended to delete the portion of the sentence stating that the sentence will be served concurrently with “any other revocation.” This matter is remanded to the trial court for a determination and clarification of the defendant’s parole and/or probation status.

CONVICTIONS AFFIRMED; SENTENCE AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS

. LSA-C.Cr.P. art. 857 provides: "The effect of granting a new trial is to set aside the verdict or judgment and to permit retrial of the case with as little prejudice to either party as if it had never been tried.”

. It is noted that insufficiency of the evidence is not listed as a ground for arrest of judg *19 ment in LSA-C.Cr.P. art. 859. In State v. Ijaz, 427 So.2d 848, 850 (La.1983), the Supreme Court held that grounds listed in LSA-C.Cr.P. art. 859 are exclusive, and thus, a court cannot entertain any other grounds when considering a motion in arrest of judgment.

. It is noted that, in the trial court and on appeal, the defendant did not raise issues *23 related to a confession or identification. On January 31, 2008, the defendant filed a pro se motion to suppress evidence of identification; however, he did not raise issues regarding the identification procedure in the trial court or on appeal.

. California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991).

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

. See State v. Grimes, supra. In that case, this Court found that the officers clearly had probable cause to arrest defendant since he had just committed the crime of distribution of marijuana and, therefore, the removal of currency from defendant's possession was permissible as a search incident to a lawful arrest. Id., 09-2 at 6, 16 So.3d at 424.