STEPHEN J. WINDHORST, Judge.
|ROn February 27, 2013, defendant, Adrian Williams, was convicted of second degree murder of Carl Grant, in violation of La. R.S. 14:3o.!.[1] Defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. For the reasons that follow, we affirm defendant’s conviction and sentence and remand for correction of the commitment.
In the late hours of December 4, 2010, Grayland Mitchell accompanied the victim, Carl Grant, to the Cozy Kit bar in Gretna where the victim was emceeing a party. Shortly before midnight, the victim was involved in an altercation with other individuals inside the bar. Mr. Mitchell tried *907 to help the victim, and as the altercation moved outside, he and the victim tried to leave the scene. Mr. Mitchell heard two gunshots and realized that the victim was not behind him. While looking for his friend, an individual pointed a gun at his head and said, “You’re not the one,” and ran back toward the bar. Within seconds of the individual leaving, Mr. Mitchell heard seven or eight more gunshots, followed by somebody saying |4that the victim had been shot. Subsequently, Mr. Mitchell identified defendant from a photographic lineup as the person who pointed a gun at his head the night of the victim’s murder.
Shortly after midnight on December 5, 2010, Officer Roland Kindell of the Gretna Police Department responded to a report of gunfire at the Cozy Kit. Upon his arrival, he heard five to seven gunshots, but could not discern their origin as his view was obstructed by approximately 75 to 100 people gathered outside the bar. After speaking with several witnesses, Officer Kindell developed the defendant and Jason Elliot as suspects in the murder of the victim.
Sergeant Tris Lear was working a detail at a location near the Cozy Kit and heard “two distinct gunshots ring out in the air” and heard one of his police units responding to the Cozy Kit. Sergeant Lear responded to the scene to assist and speak with witnesses. Detective James Compton was also working a detail at a location near the Cozy Kit and responded to the scene when he heard a transmission that a homicide occurred at the Cozy Kit. Both officers interviewed individuals on the scene and relocated to headquarters to continue with some of the interviews.
Within hours of the murder, Nedra Berry identified defendant from a photographic lineup as the person who fired shots into the air and who was present at the time of the victim’s murder. Arrest warrants were issued for Jason Elliot and defendant.
The next day, Nelson Duplessis and Jason Elliot, who had both been arrested in connection with the victim’s murder, were being held in the same cell at the police station. Detective Shaun Vinson testified that this holding cell is monitored by audio and video surveillance for safety purposes. While monitoring this cell, Detective Vinson overheard Mr. Duplessis say, “Don’t worry, I gave them the | ¡wrong name.” Mr. Duplessis acknowledged being in the holding cell with Mr. Elliot, but denied ever making such a remark.[2]
As the investigation continued, on or about December 13, 2010, Aisha Wilford contacted the police and identified defendant by name as the gunman. Sergeant Lear met with Ms. Wilford and presented her with a photograph of defendant and another photograph of Mark Williams. On the photograph of defendant, Ms. Wilford inscribed: “This is the young man I saw shooting Carl Grant 7 times.” On the photograph of Mark Williams, Ms. Wilford inscribed: “This is the person that was fighting Carl Grant on 12-04-2010. He is also (AI.’s) brother.”[3] Detective Louis Alvarez, who was present during the interview of Ms. Wilford, testified that she neither hesitated in her identification of defendant as the perpetrator nor in her *908 identification of Mark Williams as a participant in the fight.
Subsequently, Ms. Wilford contacted the police again and changed her story. She told the police that based on a dream she had, she believed Mark Williams shot the victim, not defendant. The police offered Ms. Wilford the opportunity to recant her previous statement and provide a new one, but she refused and in a taped statement she maintained that defendant was the gunman.
DISCUSSION
In counseled assignments of error one through three, defendant argues that the verdict is contrary to the law and evidence, the district court erred in denying his motion for post-verdict judgment of acquittal, and the district court erred in denying his motion for new trial. In his first pro se assignment of error, defendant argues that the evidence is insufficient to support his conviction of second degree murder. In support of these four assignments of error, defendant presents one |fiargument in which he submits that the evidence was insufficient to support his second degree murder conviction. He argues that the lack of physical and scientific evidence linking him to the crime as well as the conflicting and inconsistent testimony were insufficient to find him guilty beyond a reasonable doubt.
A denial of a motion for new trial based on the verdict being contrary to the law and the evidence is not subject to review on appeal. State v. Bazley, 09-358 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 19, writ denied, 11-0282 (La.6/17/11), 63 So.3d 1039. However, both the Louisiana Supreme Court and this Court have addressed the constitutional issue of the sufficiency of the evidence under this circumstance. Id. Therefore, we will address this assignment of error.
Additionally, this Court has recognized that the question of sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal. See State v. Thomas, 08-813 (La.App. 5 Cir. 4/28/09), 13 So.3d 603, 606 n. 3, writ denied, 09-1294 (La.4/5/10), 31 So.3d 361. The record reflects that defendant argued that the evidence was insufficient in his motion for post-verdict judgment of acquittal.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09-953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885.
|7The reviewing court is not permitted to re-evaluate the credibility of witnesses or re-weigh the evidence. State v. Caffrey, 08-717 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La.2/5/10), 27 So.3d 297. The resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. See State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a *909 conviction. State v. Dixon, 07-915 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 153, writ denied, 08-0987 (La.1/30/09), 999 So.2d 745.
Defendant was convicted of second degree murder in violation of La. R.S. 14:30.1. Second degree murder is defined, in pertinent part, as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.[4] La. R.S. 14:30.1(A)(1). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. State v. Seals, 09-1089 (La.App. 5 Cir. 12/29/11), 83 So.3d 285, 306, writ denied, 12-0293 (La.10/26/12), 99 So.3d 53, cert, denied, — U.S. —, 133 S.Ct. 2796, 186 L.Ed.2d 863 (2013). The determination of specific intent is a question of fact. Id. at 306. Specific intent may be inferred from the circumstances and from the defendant’s actions, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim’s injuries. Id. Further, a specific intent to kill |Rmay be inferred from the intentional use of a deadly weapon such as a knife or gun. State v. Cochran, 09-85 (La.App. 5 Cir. 6/23/09), 19 So.3d 497, 508, writ denied, 09-1742 (La.3/26/10), 29 So.3d 1249; see also State v. Gonzalez, 07-449 (La.App. 5 Cir. 12/27/07), 975 So.2d 3, 8, writ denied, 08-0228 (La.9/19/08), 992 So.2d 949.
In addition to proving each statutory element of the crime charged, the State must also prove the identity of the perpetrator. State v. Williams, 08-272 (La.App. 5 Cir. 12/16/08), 3 So.3d 526, 529, writ denied, 09-0143 (La.10/16/09), 19
So.3d 470. Thus, in order to carry its burden of proof, the State is required to negate any reasonable probability of mis-identification. Id. Positive identification by only one witness is sufficient to support a conviction. Id. This Court has also upheld convictions based on identifications later recanted. See State ex rel. D.W., 09-855 (La.App. 5 Cir. 9/14/10), 47 So.3d 1048, 1057.
The guilty verdict was based upon eyewitness testimony. Mr. Mitchell identified defendant as the person who pointed a gun at his head and stated “You’re not the one” shortly before he heard several gunshots followed by the victim’s death. Ms. Berry testified that she observed three people, including defendant, surround the victim on the ground and discharge approximately five gunshots at him. Approximately one week after the murder, Ms. Wilford identified defendant as the gunman who shot the victim seven times, but soon thereafter changed her story and told the police that defendant was not the gunman. Ms. Wilford offered inconsistent testimony at trial, initially testifying that she made eye contact with defendant as he discharged his weapon at the victim and then testifying that defendant did not shoot the victim.
Defendant presented his version of events through his own testimony and that of Tiffany Walker, Michelle Joseph, Dominique Gourgis, Nelson Duplessis, |9and Dionne Gillard, who all testified that defendant did not shoot the victim and was not involved in the altercation that night.
Confronted with and in weighing the conflicting and inconsistent testimony, the jury obviously found the State’s witnesses more credible than those for defendant, *910 and found Ms. Wilford’s accusatory statements more credible than her recantations. The testimony that defendant discharged a firearm several times at the victim, when viewed in the light most favorable to the prosecution, supports the conclusion that-any rational trier of fact would have found beyond a reasonable doubt that defendant acted with a specific intent to kill or to inflict great bodily harm.
Accordingly, the trial court did not err in denying defendant’s motion for post-verdict judgment of acquittal on the basis of insufficient evidence. Additionally, the trial court did not abuse its discretion in denying, defendant’s motion for new trial on this basis. See State v. Richoux, 11-1112 (La.App. 5 Cir. 9/11/12), 101 So.3d 483, 490, writ denied, 12-2215 (La.4/1/13), 110 So.3d 139. These assignments of error are without merit.
In counseled assignment of error four and defendant’s second pro se assignment of error, defendant argues that the trial court erred in failing to suppress Aisha 'Wilford’s identification of him as the perpetrator because the single photograph identification procedure employed was inherently suggestive.'
On June 9, 2011, defendant filed a motion to suppress identification and moved to suppress “all identifications.” Defendant argued that the motion should be granted because he was viewed under circumstances which impermissibly suggested that he was the perpetrator; the identification procedure was conducted without his counsel in violation of his Sixth Amendment rights; and the identification procedure was so suggestive that it tainted his rights.
|10At the motion hearing, Sergeant Lear testified that Aisha Wilford, who had indicated that she knew defendant and his family, was presented with a single photograph of defendant “to make certain that [she and the police] were talking about the same individual.” The trial court denied the motion to suppress.
A trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Sam, 11-469 (La.App. 5 Cir. 2/14/12), 88 So.3d 580, 586, writ denied, 12-0631 (La.9/12/12), 98 So.3d 301. A trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. Id. In determining whether the trial court’s ruling on a motion to suppress is correct, an appellate court is not limited to the evidence presented at the motion to suppress hearing but also may consider pertinent evidence presented at trial. Id.
Generally, a defendant has the burden of proof on a motion to suppress an out-of-court identification. State v. Bradley, 11-1060 (La.App. 5 Cir. 9/25/12), 99 So.3d 1099, 1105, writ denied, 12-2441 (La.5/3/13), 113 So.3d 208. This requires the defendant to first prove that the identification procedure was suggestive. Id. An identification procedure is considered suggestive if the attention of the witness is unduly focused on the defendant during the procedure. Id. If the defendant succeeds in establishing that the identification procedure was suggestive,, the defendant must then show there was a substantial likelihood of misidentification as a result of the identification procedure. Id. at 1106. It is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness. Id.
Single photograph identifications are generally viewed by the courts with suspicion. State v. Jones, 09-688 (La. App. 5 Cir. 2/9/10), 33 So.3d 306, 318. InHowever, their suggestive nature will *911 not per se preclude admissibility unless there was a substantial likelihood of mis-identification under the totality of the circumstances. Id.
In Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), the United States Supreme Court, considering a single photograph identification procedure, held that “reliability is the linchpin in determining the admissibility of identification testimony.” The Court enumerated several factors to be considered in determining whether an identification is reliable: (1) the witness’ opportunity to view the criminal at the time of the crime, (2) the witness’ degree of attention, (3) the accuracy of the prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. Id. at 114-115, 97 S.Ct. 2243.
In State v. Crossley, 48,149 (La.App. 2 Cir. 6/26/13), 117 So.3d 585, 595, writ denied, 13-1798 (La.2/14/14), 132 So.3d 410, the defendant, who had been convicted of two counts of second degree murder, argued on appeal that the trial court erred in denying his motion to suppress a single photograph identification. The identification had been made by an eyewitness who was “familiar” with the defendant and first identified him as the perpetrator by name before being shown a single photograph by the police “to confirm” that they were talking about the same person. Id. at 596. Applying the factors to determine whether the identification was reliable, the Second Circuit Court of Appeal found the trial court had not erred in denying the motion to suppress the identification. Id. at 597-98. The court found that the eyewitness knew the defendant and made the photographic identification after she had identified the defendant by name as the perpetrator. Id. Thus, the purpose of the photographic identification was “to ensure that the defendant was actually the person [the eyewitness] identified as the assailant.” Id.
| i2Assuming arguendo that the single photograph identification was suggestive, applying the Manson factors, we find there was not a substantial likelihood of misidentification for the following reasons.
First, despite Ms. Wilford’s recantation, she initially testified that she was “not far” from defendant when she made eye contact with him as he discharged his weapon at the victim.
Second, even though she testified that she made eye contact with the gunman, Ms. Wilford testified that she did not get a good look at the gunman and that she had been drinking “a lot” that night. Yet, notwithstanding this claim of intoxication, her testimony at trial demonstrated an ability to recall numerous details of that night.
Third, Ms. Wilford did not give a physical description of the perpetrator to the police. She identified defendant by name as the perpetrator. At the suppression hearing, Sergeant Lear testified that Ms. Wilford told him that she lived near defendant’s family and was “very familiar” with defendant, his brother, and his mother. At trial, Ms. Wilford testified that she has known defendant and his brother Mark “for a long time” and that she can easily distinguish the two.
Fourth, Detective Louis Alvarez testified that Ms. Wilford neither hesitated in her identification of defendant as the perpetrator nor in her identification of Mark Williams as a participant in the fight. Indeed, the inscriptions Ms. Wilford affixed to defendant’s photograph and Mark Williams’ photograph do not suggest she was uncertain in these identifications. On defendant’s photograph, she wrote: *912 “This is the young man I saw shooting Carl Grant 7 times.” On the photograph of Mark Williams, she wrote: “This is the person that was fighting Carl Grant on 12-04-2010. He is also (AJ.’s) brother.”
11sLastly, although Ms. Wilford identified defendant in the photograph eight days after the victim’s murder, this delay is not significant since Ms. Wilford is “very familiar” with and has known defendant and his family “for a long time.” Moreover, at the time of Ms. Wilford’s identification, arrest warrants for defendant and Mr. Elliot had previously been issued. It was one week after the issuance of the warrants that Ms. Wilford, on her own accord, contacted the police and informed them that she had witnessed defendant perpetrate the shooting. Thus, her single photograph identification merely confirmed information already provided to the police. Sergeant Lear testified that Ms. Wilford was presented a single photograph not for purposes of identifying the perpetrator, but to confirm that she and the detectives were talking about the same person.
Accordingly, we find no abuse of discretion in the trial court’s denial of defendant’s motion to suppress. These assignments of error are without merit.
ERRORS PATENT
The record was reviewed for errors patent, according to the mandates of La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following requires corrective action.
The Uniform Commitment Order incorrectly states that the adjudication date was May 15, 2013, and that the offense date was December 9, 2010. The record indicates that the jury returned its verdict on February 27, 2013. The indictment and facts adduced at trial reflect that the offense occurred on December 5, 2010.
Accordingly, we remand this matter and order the Uniform Commitment Order be corrected to reflect the correct adjudication and offense dates. See State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142. The Clerk of Court is ordered to transmit the original of the corrected Uniform Commitment 114Order to the officer in charge of the institution to which defendant has been sentenced and to the Department of Corrections’ legal department. La. C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam). We further order that, in addition to the record copy, a separate copy of this opinion be delivered to the Clerk of Court for the Twenty-Fourth Judicial District Court for the Parish of Jefferson.
CONCLUSION
For the above stated reasons, defendant’s conviction and sentence are affirmed and we remand for correction of the commitment.
CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT.

. Co-defendant, Jason Elliot, was also indicted for the second degree murder of Carl Grant.

. Mr. Duplessis testified that he was convicted in this case of accessory after the fact to second degree murder, in violation of La. R.S. 14:25:30.1, for which he received five years active probation.

. Defendant’s nickname is "A.I.”

. The record indicates that defendant was prosecuted for and convicted of specific intent second degree murder since the jury was only instructed as to specific intent second degree murder.